ESTATE OF Joseph CAPORELLA, Deceased.

Nick A. CAPORELLA, Personal Representative, and Jean Caporella, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 86–5372.

United States Court of Appeals, Eleventh Circuit.

May 26, 1987.

Theodore F. Brill, Miami, Fla., for petitioners.

Michael L. Paup, Chief, Appellate Section, Tax Division, U.S. Dept. of Justice, Richard Farber, John A. Dudeck, Jr., Washington, D.C., Roger M. Olsen, Asst. Atty. Gen., William F. Nelson, Chief Counsel, I.R.S., Washington, D.C., for respondent.

Before KRAVITCH and HATCHETT, Circuit Judges, and MORGAN, Senior Circuit Judge.

MORGAN, Senior Circuit Judge:

Petitioners appeal the tax court's denial of their petition for a redetermination of deficiencies, and its findings that said deficiencies were not untimely assessed under the applicable statute of limitations. The sole issue involved is whether the period for assessing a deficiency against the Caporellas for 1976 expired prior to the date on which the Commissioner issued the notice of deficiency. Resolution of this issue depends upon whether Form 5214 is a general or a restricted consent to extend the period of limitations. We agree with the tax court's determinations in affirming their denial of said petition.

Joseph Caporella (deceased) and Jean Caporella, filed joint tax returns from 1971 through 1977. From 1971 to 1973, the Caporellas reported losses incurred from a horsebreeding activity. The Internal Revenue Service through Agent William Krenshaw suggested that they sign Forms 5213 and 5214 to toll the statute of limitations for tax assessments on the horsebreeding issue until 1977, in order to determine whether said activities were engaged in for profit.[1] Accordingly, the Caporellas signed these forms.[2] Originally these forms covered only the 1971 tax return and extended the period of limitations until December 31, 1979. However, upon the advice of their accountant, Saul Radler, the Caporellas signed another Form 5214 covering the taxable years 1972 through 1976, extending the last date for assessing a deficiency for 1976 to April 15, 1980.

On their 1976 return, the Caporellas reported an adjusted gross income of negative $37,190, which included $199,973 in partnership losses stemming in part from two movie theater tax shelters totaling $34,827. The Caporellas filed an Application for Tentative Refund seeking to carry back a net operating loss of $41,646 and an unused investment tax credit of $675 from 1976 to 1973. Upon acceptance of this application, the Caporellas received a $25,-195 refund for 1973 and a $318 refund for 1974 since they had computed their tax liability for 1974 by income averaging, using 1973 as a base year.

After the Caporellas filed their 1977 tax return, the Commissioner reactivated his examination of the Caporellas' horsebreeding activity for the years 1971 through 1977. In late 1979, a third Form 5214 was presented to the Caporellas extending the time to assess a deficiency for the years 1971 through 1977 until December 31, 1980. This was signed by Mrs. Caporella and Nick A. Caporella acting as representative of the estate of Mr. Caporella, who died in 1978. (Mrs. Caporella and Nick A. Caporella are the petitioners in the case at bar.) However, this form was not executed by the Commissioner before the expiration of the second Form 5214 on December 31, 1979.[3]

In March 1980, the parties executed a Form 872[4] covering the 1976 tax year. This extended the period of limitations for assessing deficiencies for 1976 from April 15, 1980 to December 31, 1980.

The Caporellas' tax audit was finally assigned to Agent Paul Goldman, who began to meet regularly with the Caporellas' accountant Saul Radler. Incognizant of the third Form 5214's untimely execution, Agent Goldman requested the petitioners

---

1. Section 183(a) of the Internal Revenue Code of 1954 holds that losses incurred from activities not engaged in for profit are nondeductible. However, § 183(d) allows deductions for losses stemming from activities consisting of the breeding, training, showing, or racing of horses if the taxpayer clears a profit in two out of seven consecutive taxable years. If this requirement is met, the activity will be classifiable as one engaged in for profit.

2. Form 5213 is an election to postpone determination with respect to the presumption that an activity is engaged in for profit. Form 5214 provides consent for extending the statute of limitations for the assessment of income tax.

3. The Commissioner executed the third Form 5214 on October 1, 1980.

4. Form 872 provides taxpayer's consent to extend time to assess tax for a certain taxable year.

to sign another Form 872-A[5] for the years 1971 through 1977; however, Mr. Radler insisted that his clients would only sign a Form 5214. Agent Goldman consulted with his supervisor, Almira Kinickey, who advised him to use the Form 5214. The parties executed this fourth Form 5214 on September 19, 1980, extending the period of limitations for the years 1971 through 1977 until December 31, 1982.

In November 1980, the Commissioner sent the petitioners a "30-day letter" along with the agent's adjustment report for the Caporellas' 1971 through 1977 tax returns. This report disallowed losses claimed by the Caporellas for their horsebreeding activities and movie theater partnership. On September 13, 1982, the Commissioner requested the petitioners to sign a Form 872-A for the 1976 tax year. The petitioners refused. Accordingly, on December 14, 1982, a statutory notice of deficiency was issued, disallowing $34,827 in partnership losses from the two movie tax shelters claimed by the Caporellas in 1976 and 1977. The disallowance for 1976 resulted in a reduction of the net operating loss carryback from 1976 to 1973, and an increase in the amount of averagable income used to compute the Caporellas' 1974 tax, thereby increasing their tax for 1974. The disallowance did not result in a deficiency for 1976.

The petitioners filed a petition for a redetermination of deficiencies in income for the years 1973, 1974, and 1977, in the amounts of $20,222.86, $318.00, and $2,987.35, respectively. The tax court found for the Commissioner, holding that the adjustments to the Caporellas' 1976 return were not time-barred; therefore, the period of limitations for assessing deficiencies for the years 1973 and 1974 arising from the net operating loss carrybacks had not expired prior to the issuance of the deficiency notice.

The key issue in this case revolves around the restrictive or general character of the 5214 waiver. The statute of limitations for assessing deficiencies is three years.[6] If the Form 5214 is a waiver restricted to activities engaged in for profit exceptions (as petitioners contend), then the Commissioner's assessment of deficiency for the Caporellas' movie theater losses was not protected by said waiver and was therefore untimely. On the other hand, if, as the respondent argues, the 5214 waiver was general in content, then the movie theater losses were properly assessable. The lower court held that Form 5214 was a general waiver.

■ The tax court's first determination resulted from its comparison of the Form 5214 to Form 872. Basically, the tax court examined the two forms side by side. Although we have not uncovered a previous case dealing with this type of tax form interpretation, other decisions lead us to believe that the tax court's comparison was a conclusion of law. *See Washington Metro. Area Transit Auth. v. Mergentime Corp.*, 626 F.2d 959 (D.C.Cir.1980) (interpreting plain language of a contract is a question of law); *Turner v. Orr*, 759 F.2d 817 (11th Cir.1985) (construction of a consent judgment is a question of law); *Healy Tibbitts Constr. Co. v. Insurance Co. of N. Am.*, 679 F.2d 803 (9th Cir.1982) (construction of insurance policy is conclusion of law). The tax court's ruling on the effect of the Tax Reform Act of 1976 on Form 5214 is also a conclusion of law. "In construing a change in the law, a court of review does not owe to a district court's construction the substantial deference it owes to the district court's findings of fact." *American Horse Protection Ass'n v. Watt*, 694 F.2d 1310 (D.C.Cir.1982) (interpreting the Wild Free-Roaming Horses and Burros Act, 16 U.S.C. §§ 1331–1340). Therefore, each of the tax court's rulings is subject to de novo review. *Turner v. Orr*, 759 F.2d 817 (11th Cir.1985).

With these standards in mind we now turn to the case at bar. The lower court compared the Form 5214 to the Form 872 and found that both were essentially the same. Therefore, since Form 872 is a general waiver, the court found the Form 5214 to likewise be general in nature. The main difference between the two forms is that

---

5. A special consent to extend the time to assess tax.

6. I.R.C. § 6501(a) (1986).

Form 5214 states that the taxpayer should use this form only if he is filing a Form 5213. Otherwise the language on the face of the two documents is identical. Of key importance to the lower court was the fact that both forms state that "[t]he amount of *any* Federal income tax due" may be affected by the filing of these forms. (Emphasis added.)

The trial court also found that the Tax Reform Act of 1976 did not affect Form 5214's status as a general waiver. Petitioners argued that the Tax Reform Act restricted all Form 5214's executed after 1976 to the Section 183 activity engaged in for profit issue. Petitioners point to a committee report which explained the reason for the changes in the Act.[7] However, the lower court found that nothing in the statute restricts the rights of parties to use a Form 5214 to consent to extend the time for assessment with respect to items other than "hobby losses." Furthermore, the Commissioner points out that the same committee report emphasizes that the Tax Reform Act does not change waivers already existing in 1976.[8]

■ Upon a de novo review of the form's language and the statutes involved, we hold that the tax court did not err in its decision below. The two forms in question are identical in language and scope. Furthermore, since the forms are facially unambiguous, the parties' understanding and intent in signing the forms are irrelevant. Finally, the lower court had substantial evidence of congressional intent to determine that the Form 5214 was not meant to be further restricted by the Tax Reform Act of 1976.

The tax court's decision to deny said petition is AFFIRMED.

---

7. Petitioners rely on this passage:

   In order to accomplish the purposes which Congress sought when it enacted the look-forward presumption of Section 183(e), it is not necessary to keep the statute of limitations open for all issues on the taxpayer's return during the 5 (or 7) year period. The only issues on which the statute of limitations needs to remain open concern the deductions which will be tested as to whether they are incurred in an activity which the taxpayer engaged in for profit. The committee believes that a taxpayer should be able to take full advantage of a statutory presumption which was intended for his benefit, without unnecessarily extending the statute of limitations for items on his return which are unrelated to deductions which might be disallowed under Section 183.

   S.Rep. No. 94–938, 94th Cong., 2d Sess. 67–68 (1976), U.S.Code Cong. & Admin.News 1976, pp. 2897, 3503–3504, 1976–3 C.B. (Vol. 3) 49, 105–106.

8. A footnote to the Joint Committee General Explanation states:

   The provision is not designed to affect existing general waivers of the statute of limitations, because to do so would allow taxpayers who have previously signed such waivers to escape an examination of issues not related to Section 183.

   S.Rep. No. 94–938, 94th Cong., 2d Sess. 68, n. 19, (1976), U.S.Code Cong. & Admin.News 1976, p. 3504, 1976–3 C.B. (Vol. 3) 106. Furthermore,

   [T]he bill does not affect general waivers of the statute of limitations which may be signed after enactment, since ... a taxpayer may wish to postpone non-section 183 until the information relating to the Section 183 presumptions is available.

   *Id.* at 68–69 (1976), U.S.Code Cong. & Admin. News 1976, p. 3504–3505, 1976–3 (Vol. 3) 106–107.