**William C. TURNER, et al.,
Plaintiffs-Appellees,**

v.

**Verne ORR, Secretary of the Air Force, et al., Defendants-Appellants.**

**No. 84–3266.**

United States Court of Appeals,
Eleventh Circuit.

April 18, 1985.

---

[*] Honorable Floyd R. Gibson, U.S. Circuit Judge  for the Eighth Circuit, sitting by designation.

Mark W. Pennak, U.S. Dept. of Justice, Civil Div. Appellate Staff, Robert S. Greenspan, Washington, D.C., for defendants-appellants.

Thomas A. Warren, Tallahassee, Fla., for PMC.

Before GODBOLD, Chief Judge, HATCHETT, Circuit Judge, and TUTTLE, Senior Circuit Judge.

TUTTLE, Senior Circuit Judge:

This case concerns a final order entered by a special master and affirmed by the district court applying and enforcing the provisions of a consent judgment. The consent judgment was entered January 12, 1981, in settlement of a class action suit brought against the Air Force under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, for alleged racial discrimination against civilian black employees and applicants for employment at Eglin Air Force Base in Florida. This consent judgment was adopted by the district court after conducting a four-day fairness hearing on February 4, 1980; September 16, 1980; December 16, 1980; and January 12, 1981.

Under the consent judgment, defendants agreed "to make a good faith effort" to reach and maintain specified racial proportions on a percentage basis for specific job categories. (Judgment, § VII ¶ 1). Similarly, in Section X of the consent judgment, defendants agreed to "make every good faith effort" to fill supervisory positions with blacks "in proportion to the percentage of blacks in the occupational category wherein the vacancy arises." (Section X, ¶ 3). The consent judgment defines the phrase "good faith effort" as meaning "every necessary and appropriate step will be taken to realize the specified objectives." (Section II, ¶ 9). The percentages specified

in the consent judgment are stated not to be quotas; rather the specified proportions are expressly referred to as "goals." (Section VII, ¶¶ 2, 3, 4, 5).

Pursuant to § IX of the consent judgment, in September 1983, the plaintiffs' monitoring committee ("PMC") brought before the special master the complaint of Raymond Little, a member of the plaintiff class.

The complaint was in form of a statement filed by the PMC in which the following language was used:

C. The Issues Brought Before The Special Master:

Whether, in violation of Paragraph 4, Section IX of the Consent Judgment, the Defendants discriminated against Raymond Little when they failed to hire him for two positions. The two vacancies at issue are both supervisory positions in Series 5306 at the WS-7 level, Air Conditioning Equipment Mechanic Foreman. The first was filled by Arthur Kelly on March 21, 1982....

The special master found that the defendants in filling one of the supervisory positions had violated the provision of the consent judgment that required them to "make every good faith effort" to fill supervisory positions with blacks "in proportion to the percentage of blacks in the occupational category wherein the vacancy arises." He ordered that Little be placed in a *vacant* supervisory position and awarded back pay. The court denied motion for stay, so Little is filling the job now.

■ Appellees have questioned the jurisdiction of this Court over this appeal. The special master ordered the immediate promotion of Little and instructed counsel to "calculate seniority, back pay, and other appropriate relief." Appellees contend that because the amount of the damages was undetermined, this was not an appealable final judgment. We disagree. The calculation required under the special master's report is purely ministerial in nature—a simple arithmetic calculation of back pay and seniority. Such ministerial acts concerning the execution of a judg-

ment do not affect the finality of the decree.

## I. ISSUES

The issues for decision by this Court are as follows:

1. Did the special master err in finding that the Air Force had violated the "good faith" provisions of the consent judgment?

2. Is the remedy ordered by the special master authorized by the consent judgment?

3. Does the remedy ordered by the special master violate Section 706(g) of Title VII?

## II. DISCUSSION

A. *Violation of the Consent Judgment*

The special master held that the Air Force violated the good faith provisions of the consent judgment. The Secretary contends that this finding was based on a construction of the consent judgment which is contrary to the intent of the parties.

As a preliminary matter, we must determine the appropriate standard of review. The district court indicated that "The question whether defendants acted in good faith is a pure question of fact with the special master's determination respecting it subject to review under the ... clearly erroneous standard." The Secretary argues that the clearly erroneous standard is inapplicable because construction of a consent judgment is a question of law. He contends that the special master's finding of a violation was based on an interpretation of the legal duties placed on appellants by the term "good faith." Hence, the Secretary urges review *de novo* by this Court as a legal question.

■ The Secretary's argument fails to distinguish between construction of a consent judgment, which is a question of law, and a finding that appellants' actions failed to comply with the standards established by the consent judgment, which is a factual inquiry. As the Supreme Court indicated

in the recent case of *Firefighters Local Union No. 1784 v. Stotts*, — U.S. —, 104 S.Ct. 2576, 2586, 81 L.Ed.2d 483 (1984) (citation omitted), the "scope of a consent decree must be discerned within its four corners." Construction of a consent judgment is thus a question of law subject to *de novo* review. In the instant case, however, the scope of the consent judgment is not in issue. The consent judgment plainly requires that the Air Force "make every good faith effort to fill [supervisory] positions in proportion to the percentage of blacks in the occupational category wherein the vacancy arises." "Good faith effort" is defined in the consent judgment to mean that "every necessary and appropriate step will be taken to realize the specified objectives." The special master reviewed the specific actions of the Air Force in filling the supervisory vacancy and determined that those actions failed to meet the good faith standard established by the consent judgment. This is a factual determination which we review under the clearly erroneous standard.

■ The special master found that the good faith provisions had been violated on alternative grounds, as follows:

> The Special Master determined that the good faith provisons of the Consent Judgment goals section were violated by the Defendants when the Defendants hired Mr. Kelly, a caucasian male, without ever notifying the selecting supervisor at any point in time that this was a Consent Judgment goal position. Notifying selecting supervisors, in some manner, that the position is subject to the Consent Judgment goals would be a minimal action necessary to meet the good faith requirement of the Consent Judgment.

> The Special Master reaches the conclusion that the good faith requirement was not meet [sic] in this particular case on an alternative ground. The essence of the closing argument by the Defendants was that even if Mr. Little were qualified to fill the vacancy it was unreasonable to select anyone other than Mr. Kelly be-

cause Mr. Kelly was more qualified than Mr. Little.... Defendants' argument misses the mark. One would assume that in the absence of the Consent Judgment that whenever selecting officials have a number of qualified candidates from which to choose the officials would hire the best qualified applicant. If all that the good faith provision requires in this situation is the selection of the best qualified candidate then the provision is a nullity. The drafters of the Consent Judgment, by its express language, clearly intended that additional effort be exerted by the Defendants in meeting the goals. Thus, in this particular situation, assuming without deciding that Mr. Kelly was the best qualified candidate, the Defendants' argument that the good faith requirement was met because the supervisors selected the best qualified candidate from a group of qualified candidates is without merit.

These findings are amply supported by the record. The Secretary concedes that the selecting supervisors were not notified that the vacancy was one covered by a consent judgment goal. When the vacancy was filled originally on a temporary basis, the Air Force unilaterally decided that the goals did not apply to temporary positions. Later, the position was converted to permanent status noncompetitively. Thus, at no point were the selecting officials even notified that good faith efforts to meet the consent judgment goals were required.

Moreover, it is clear that good faith efforts were not made. As the special master found, the Air Force officials involved testified that they considered the good faith requirement to be met if they selected the best qualified candidate. The special master correctly found that such an interpretation would render the good faith requirement a nullity because discrimination is barred by Title VII and by Section II of the consent judgment.

Little was well qualified for the supervisory position. He had an Associate of Arts Degree, additional college courses, and specialized courses in air conditioning. He had

12 years experience as an air conditioning mechanic and extensive supervisory experience in the Army and Army reserve. Two of the three members of the all white selection committee testified that Little was less qualified than the individual selected because he had less supervisory experience. Yet both admitted that they were unaware of the full extent of Little's supervisory experience and had not reviewed his personnel file. Little testified that he was asked no questions about his prior supervisory experience and that his interview lasted approximately 15 minutes, while that of the selected individual may have lasted an hour. One of the committee members testified that education was one of three key factors in the selection, although he later testified it was less important than the other factors. The individual selected had only a GED high school diploma, while Little had an Associate of Arts Degree plus additional courses. One committee member testified that Little lacked the requisite mechanical skills, but this was contradicted by his own written performance appraisals of Little.

We need not decide what steps are sufficient to meet the good faith requirement of the consent judgment. Numerous opportunities for the Air Force to make good faith efforts are suggested by the facts in this case, however. The Air Force could have notified the supervisors that the consent judgment goals applied to the vacancy, it could have taken the time to interview Little thoroughly and to review his personnel file to learn of his supervisory experience, it could have included minority members in the selection committee, it could have evaluated carefully its selection criteria to determine if the extra years of experience of the individual selected really made him "better qualified" than Little with his better education and ample experience. We cannot find that the Air Force demonstrated that it made *any* effort to meet the consent judgment goal in filling this vacancy. Thus, the special master's finding that the Air Force failed to comply with the good faith requirements of the consent judgment is not clearly erroneous.

■ Before turning to the remaining issues in this case, we must mention one false issue raised by the Secretary. The Secretary repeatedly asserts in his briefs that the special master construed the good faith provisions to require "the Secretary to hire or promote only class members until the 'goals' are met." There is simply no such holding in the special master's report. The special master held only that the steps taken in this case were insufficient to meet the good faith requirement and that the mere assertion that the best qualified candidate was chosen does not constitute a good faith effort. The Secretary builds on his erroneous interpretation of the special master's holding by arguing that a decree according an absolute promotion preference to class members violates both Title VII and the equal protection rights of innocent third parties. Because the special master's order does not require an absolute promotion preference for class members, we need not reach these arguments.

## B. *Remedy for Consent Judgment Violation*

Having found that defendants violated the consent judgment, the special master ordered defendants to promote Little to a vacant supervisory position with back pay. The Secretary contends that this remedy is not authorized by the consent judgment.

■ The consent judgment provides, "In the event that the Special Master determines that a violation of the Judgment has occurred, he shall be authorized to order all appropriate relief therefor...." We hold that this provision fully authorized the special master's award of promotion and back pay in this case. The special master found that defendants had violated the good faith provisions of the consent judgment, and the relief he ordered was entirely appropriate for the violation.

The Secretary argues, however, that the remedies available to the special master are limited by the general provision in the consent judgment that "In interpreting the provisions of this Judgment which may be-

come disputed among the parties, the law as set forth by Title VII of the Civil Rights Act of 1964 as construed by the courts, shall apply." The Secretary contends that Title VII authorizes the remedies of promotion and back pay only for actual victims of discrimination and, hence, these remedies should be reserved for victims of discrimination under the consent decree. We see no merit in this argument. The consent judgment specifically provides for "all appropriate relief" to be given for consent judgment violations. Nothing in Title VII addresses the question of what relief is appropriate for such violations because Title VII deals with discrimination, not with violations of consent judgments. Title VII's remedy provisions are therefore of no assistance in determining what relief is "appropriate" for the Secretary's violation of the consent judgment, and the special master correctly relied upon a careful assessment of the nature of the violation in this case in deciding what relief was appropriate.

The Secretary also contends that the special master could not order back pay and promotion in the absence of a specific finding that "but for" the consent judgment violation, Little would have been promoted. The Secretary's argument is based on analogy to the principle under Title VII that even when discrimination has been proven, the plaintiff is not entitled to relief if the defendants prove by a preponderance of the evidence that plaintiff would not have been hired even in the absence of discrimination. *Lewis v. Smith*, 731 F.2d 1535, 1538 (11th Cir.1984). The Secretary's analogy is faulty, however, because relief here is being granted not for violation of Title VII, but for violation of the consent judgment. The consent judgment authorizes the special master to order appropriate relief when he determines that the con-

sent judgment has been violated. No "but for" finding is required.

We hold, therefore, that the relief ordered by the special master was authorized by the consent judgment.

### C. *Title VII*

The Secretary's final contention is that the remedy ordered by the special master is in violation of Section 706(g) of Title VII of the Civil Rights Act of 1964 as recently interpreted by the Supreme Court in *Stotts*.

In *Stotts* the Supreme Court overturned an order enjoining the city of Memphis from laying off firefighters in accordance with the seniority system established in a collective bargaining agreement. The district court order was intended to prevent the layoffs from having a negative effect on minority gains made under a previous consent decree setting hiring and promotion goals for minorities. The Supreme Court held that the order was neither authorized by the original consent decree nor a legitimate modification of that decree that could be imposed on the city without its consent.

The Secretary contends that under *Stotts*, Section 706(g) of Title VII bars any court from ordering a promotion and back pay in the absence of a finding that the complainant suffered actual discrimination.[1] He points to the language in *Stotts* indicating that the policy of Section 706(g) is "to provide make-whole relief only to those who have been actual victims of illegal discrimination." *Id.* 104 S.Ct. at 2589. He notes that in this case there has been no finding of discrimination against Little. He argues that the relief provided to Little violates the rights of innocent third parties.

We do not find the *Stotts* decision to be controlling in the instant case. *Stotts* is

---

1. Section 706(g) provides in pertinent part:
   No order of the court shall require the admission or reinstatement of an individual as a member of a union, or the hiring, reinstatement, or promotion of an individual as an employee, or the payment to him of any back pay, if such individual was refused admission,

suspended, or expelled, or was refused employment or advancement or was suspended or discharged for any reason other than discrimination on account of race, color, religion, sex, or national origin or in violation of section 704(a) of this title.

distinguishable from the case at bar in at least three respects.[2] First, a primary basis of the Supreme Court's holding in *Stotts* is that the district court's order required the city to violate the provisions of a bona fide seniority system. Section 703(h) of Title VII specifically provides that it is not an unlawful employment practice to apply different standards pursuant to a bona fide seniority system. The court identified the "issue at the heart" of *Stotts* as "whether the District Court exceeded its powers in entering an injunction requiring white employees to be laid off, when the otherwise applicable seniority system would have called for the layoff of black employees with less seniority." *Id.* 104 S.Ct. at 2585. In the case at bar there is no contention that a bona fide seniority system will be affected by the special master's order.

A second factor distinguishing the current case from *Stotts* is that no third party rights are involved. In *Stotts* the court's order would have resulted in white employees being laid off in place of less senior black employees. In this case, the special master ordered Little promoted to a vacant position. No white employee was displaced to make room for Little. That no third parties were injured is attested by the fact that no non-class member has attempted to intervene in this suit. When the consent judgment was originally entered, a fairness hearing was held, and no non-class members objected to the consent judgment, although notice was given throughout the Air Force base. The Secretary nevertheless argues that the rights of innocent third parties were violated by the special master's order. We question the standing of the Secretary to assert the rights of third parties whom he has been unable to identify.

Finally, the most significant factor distinguishing this case from *Stotts* is that the consent judgment here was voluntarily entered into by the parties. In *Stotts*, the city objected to the modified decree which was before the Supreme Court. *Stotts* therefore dealt with the power of a court to modify a consent judgment over the objection of one of the parties. The Supreme Court specifically held that the order of the district court was not authorized by the original consent decree. In contrast, we have held here that the special master's order was fully authorized by the consent judgment agreed to by the Secretary and the plaintiff class. Here, unlike in *Stotts*, the special master specifically found that the Air Force had violated the consent judgment it had voluntarily entered.

■ This distinction makes the legal basis of *Stotts* inapplicable. *Stotts* relied on Section 706(g) of Title VII which provides that "[n]o order of the court shall require the ... promotion of an individual ... if such individual was refused ... advancement ... for any reason other than discrimination." This provision merely limits the power of a court to order certain remedies under Title VII in the absence of a finding that the promoted individual was a victim of discrimination. It does not limit the remedies to which parties may voluntarily agree under a consent judgment. *See Vanguards of City of Cleveland v. City of Cleveland*, 753 F.2d 479, 487–488 (6th Cir.1985). The Supreme Court recognized that cases like this are different from *Stotts* when it stated:

[T]he Court of Appeals was of the view that the District Court ordered no more than that which the City unilaterally could have done by way of adopting an affirmative action program. Whether

---

**2.** Amicus NAACP Legal Defense and Educational Fund, Inc., suggests a fourth distinction: In this case, unlike in *Stotts*, the employer involved is the federal government. When Congress passed the Equal Employment Opportunity Act of 1972, one of its central concerns was the relegation of minorities to low status jobs in the federal service. It therefore enacted Section 717, not only making Title VII applicable to the federal government, but also imposing unique affirmative action obligations on federal agencies. Amicus thus contends that, at least as to the federal government, Section 706(g) does not bar enforcement of effective affirmative action. Because we find the court's order fully supported on other grounds, we need not reach this contention.

the City, a public employer, could have taken this course without violating the law is an issue we need not decide. The fact is that in this case the City took no such action and that the modification of the decree was imposed over its objection.

*Stotts*, 104 S.Ct. at 2590.

*Stotts* must be read in light of the Supreme Court's holding in *United Steelworkers of America v. Weber*, 443 U.S. 193, 99 S.Ct. 2721, 61 L.Ed.2d 480 (1979). In *Weber*, the Court approved a voluntary agreement between the employer and the union providing for affirmative action. The Court stated:

[S]ince the Kaiser-USWA plan was adopted voluntarily, we are not concerned with what Title VII requires or with what a court might order to remedy a past proved violation of the Act. The only question before us is the narrow statutory issue of whether Title VII *forbids* private employers and unions from voluntarily agreeing upon bona fide affirmative action plans that accord racial preferences in the manner and for the purpose provided in the Kaiser-USWA plan.

*Id.* at 200, 99 S.Ct. at 2726 (emphasis in original).

The Kaiser plan called for a 50–50 placing of blacks and whites in the employer's craft training program until the number of black craft employees approximated the percentage of blacks in the labor force. The Court found this not to be in violation of the Act. The Court noted that:

[A]n interpretation of the sections that forbade all race-conscious affirmative action would bring about an end completely at variance with the purpose of the statute and must be rejected.

*Id.* at 202, 99 S.Ct. at 2726 (citations omitted).

In the instant case, the Secretary and the plaintiff class voluntarily negotiated an agreement which, when approved by the district court, became a consent judgment. This agreement is in compliance with *Weber*. It provides specific affirmative steps to

be taken by the Air Force and establishes a remedial scheme for failure to comply with its requirements. The Air Force failed to take the steps it had voluntarily agreed to take and the special master ordered a remedy as authorized by the consent judgment. Neither Section 706(g) nor the *Stotts* decision is applicable.

The Secretary contends, however, that Section 706(g) is a limitation on the court's power and precludes the court from adopting a voluntary consent decree which includes remedies that a court could not order in a coercive action under Title VII. He points to the following language in a footnote in *Stotts*:

"[T]he District Court's authority to adopt a consent decree comes only from the statute which the decree is intended to enforce," not from the parties' consent to the decree. *System Federation No. 91 v. Wright*, 364 U.S. 642, 651 [81 S.Ct. 368, 373, 5 L.Ed.2d 349] (1961). In recognition of this principle, this Court in *Wright* held that when a change in the law brought the terms of a decree into conflict with the statute pursuant to which the decree was entered, the decree should be modified over the objections of one of the parties bound by the decree. By the same token, and for the same reason, a district court cannot enter a disputed modification of a consent decree in Title VII litigation if the resulting order is inconsistent with that statute.

*Stotts* 104 S.Ct. at 2587 n. 9. This footnote does not indicate that a court is barred from approving a consent decree that provides relief beyond that authorized in the underlying statute. "Consent decrees need not be limited to the relief that a court could provide on the merits." *Sansom Committee v. Lynn*, 735 F.2d 1535, 1538 (3rd Cir.1984) (citation omitted). The Court quoted the language from *Wright* to support its holding that a court cannot enter "a disputed modification" of a consent decree which is inconsistent with the underlying statute. *Wright* involved a decree which had become patently inconsistent with the substantive policy of the underly-

ing statute. As indicated in *Citizens for a Better Environment v. Gorsuch*, 718 F.2d 1117, 1118, 1125 (D.C.Cir.1983), *cert. denied*, —. U.S. —, 104 S.Ct. 2668, 81 L.Ed.2d 373 (1984) (citation omitted),

> The statement that a district court's "authority to adopt a consent decree comes only from the statute which the decree is intended to enforce" means only that the focus of the court's attention in assessing the agreement should be the purposes which the statute is intended to serve, rather than the interest of each party to the settlement.

*See Vanguards*, at 488–489 (citation omitted). The voluntary consent judgment in this case is entirely consistent with the purposes of Title VII, "a law triggered by a Nation's concern over centuries of racial injustice and intended to improve the lot of those who had 'been excluded from the American dream for so long.'" *Weber*, 443 U.S. at 204, 99 S.Ct. at 2728, *quoting* 110 Cong.Rec. 6552 (1964) (remarks of Sen. Humphrey). As *Weber* made clear, Section 706(g) does not bar voluntary affirmative action agreements, such as the consent judgment in this case; it is merely a limit on what a court may "require" in a coercive action under Title VII.

### III. CONCLUSION

In conclusion, we hold that the special master and the district court correctly found that the Air Force had violated the good faith provisions of the consent judgment. The remedy ordered for this violation is fully authorized by the consent judgment and, therefore, is not in violation of Section 706(g) of Title VII.

The judgment of the district court is AFFIRMED *.

The mandate shall issue FORTHWITH.

---

* Before this panel is a motion of Raymond Little to consolidate with this appeal a subsequent appeal by the Secretary of the Air Force from a judgment granting attorney's fees to Messrs. Spriggs and Warren. That appeal is No. 84–3694. It is based in large part on the denial by the special master of a motion to disqualify Messrs. Spriggs and Warren as counsel for the PMC. The Secretary strongly objects to such consolidation, one ground for such objection being "consolidation of these two appeals clearly would result in a substantial delay in deciding Mr. Little's case, contrary to the interests of both the Secretary and Mr. Little in a prompt adjudication of the appeal." Another ground for his opposition is stated: "A prompt decision in No. 84–3266 (this case) is needed to provide guidance to the district court and the parties in these other proceedings."

Agreeing with the Secretary's contention that a prompt decision of the Little appeal is required, we have denied the motion to consolidate the two appeals.