United States Court of Appeals,

Eleventh Circuit.

No. 96-4408

UNITED STATES SECURITIES AND EXCHANGE COMMISSION, Plaintiff-Appellant,

v.

Bosque Puerto CARRILLO, Terrence James Ennis, Ralf Stefan Jaeckel, Defendants-Appellees.

June 30, 1997.

Appeal from the United States District Court for the Southern District of Florida. (No. 93-685-CIV-WDF), Wilkie D. Ferguson, Jr., Judge.

Before COX and BARKETT, Circuit Judges, and SMITH[*], Senior Circuit Judge.

BARKETT, Circuit Judge:

The United States Securities and Exchange Commission ("SEC") appeals from the district court's order dismissing its claims based on lack of personal jurisdiction with respect to defendants, a Costa Rican corporation and two of its officers. Because we find that the defendants had sufficient minimum contacts with the United States, and that exercising jurisdiction would not contravene traditional notions of fair play, we REVERSE.

I. BACKGROUND

Defendant Bosque Puerto Carrillo ("Bosque") is a Costa Rican corporation that owns and operates a teak tree plantation. Defendants Ralf Stefan Jaeckel and Terence James Ennis are, respectively, First and Second Vice Presidents of Bosque, and both are Costa Rican citizens domiciled in that country. On April 12, 1993, the SEC filed a complaint alleging that the defendants fraudulently offered and sold unregistered securities to United States residents to finance Bosque's operations.[1] The SEC averred that Bosque, Jaeckel, and Ennis placed advertisements promoting

_____

Honorable Edward S. Smith, Senior U.S. Circuit Judge for the Federal Circuit, sitting by designation.

Specifically, the complaint alleged that defendants offered and sold unregistered securities in violation of 15 U.S.C. §§ 77e(a), (c), and made material misrepresentations and omissions of fact and employed schemes to defraud in connection with the offer and sale of securities in violation

these securities in *American Way,* the complimentary in-flight magazine of American Airlines, and *Lacsa's World,* a similar publication of Costa Rica's Lacsa Airlines. Defendants Jaeckel and Ennis also allegedly "arranged for two highly favorable articles about Bosque's securities" to be written for publication in *Lacsa's World* through telephone communication with a freelance author in Florida.

After hearing argument and reviewing relevant portions of the record, which included the complaint and depositions of Jaeckel and Ennis, the district court found that initial purchases of Bosque's securities were made in Costa Rica. Defendants subsequently mailed information, including prospectuses, offering materials, and applications for further investments, to previously established investors. Payments for subsequent investments were made through accounts at the Miami branch of Banco Internacional de Costa Rica, a Costa Rican bank.

II. DISCUSSION

We review the district court's dismissal for lack of personal jurisdiction *de novo.* *Sculptchair, Inc. v. Century Arts, Ltd.,* 94 F.3d 623, 626 (11th Cir.1996). Where, as here, the district court has exercised its discretion not to hold an evidentiary hearing, the standard by which to decide the issue of personal jurisdiction is clear:

> [T]he plaintiff must establish a prima facie case of personal jurisdiction over a nonresident defendant. A prima facie case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict. The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits. Finally, where the plaintiff's complaint and the defendant's affidavits [or depositions] conflict, the district court must construe all reasonable inferences in favor of the plaintiff.

*Madara v. Hall,* 916 F.2d 1510, 1514 (11th Cir.1990) (citations omitted); *see also Morris v. SSE, Inc.,* 843 F.2d 489, 492 (11th Cir.1988).

It is well established that "[t]he due process clause ... constrains a federal court's power to acquire personal jurisdiction" over a nonresident defendant. *In re Chase & Sanborn Corp.,* 835 F.2d 1341, 1344 (11th Cir.1988), *rev'd on other grounds sub nom. Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989). The exercise of personal jurisdiction comports

---

of 15 U.S.C. §§ 77q(a) & 78j(b) and 17 C.F.R. § 240.10b-5.

with due process when "(1) the nonresident defendant has purposefully established minimum contacts with the forum ... and (2) the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice." *Francosteel Corp. v. M/V Charm,* 19 F.3d 624, 627 (11th Cir.1994); *accord Vermeulen v. Renault, U.S.A., Inc.,* 985 F.2d 1534, 1545 (11th Cir.1993). The district court deemed it unnecessary to address the second prong of this inquiry, finding that the Costa Rican defendants did not have sufficient minimum contacts with the relevant forum.

To constitute minimum contacts for purposes of specific jurisdiction,[2]

> the defendant's contacts with the applicable forum must satisfy three criteria. First, the contacts must be related to the plaintiff's cause of action or have given rise to it. Second, the contacts must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum ..., thus invoking the benefits and protections of its laws. Third, the defendant's contacts with the forum must be such that [the defendant] should reasonably anticipate being haled into court there.

*Vermeulen,* 985 F.2d at 1546 (citations and quotation marks omitted).

In this case, the district court indicated that the applicable forum was the State of Florida. *See* R2-99-3. Appellees suggest that we have not yet specifically set forth a rule for identifying the relevant forum—the United States or the State where the district court sits—for purposes of minimum contacts analysis in a nondiversity action involving an alien defendant.[3] *See* Brief of Corporate Appellee at 21 (citing *Chase & Sanborn,* 835 F.2d at 1345 n. 10 (declining to address the issue of which forum was proper)). However, a survey of our precedents reveals that we generally have deemed the applicable forum for minimum contacts purposes to be the United States in cases where, as here, service of process has been effected pursuant to a federal statute authorizing nationwide or worldwide service, although we have never explicitly stated a rule to that effect. *See, e.g., Vermeulen,* 985 F.2d at 1545 (suit involving alien defendant under Foreign Sovereign

---

"Specific jurisdiction" may be exercised "over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 1872 n. 8, 80 L.Ed.2d 404 (1984). By contrast, "general jurisdiction" may be exercised "over a defendant in a suit not arising out of or related to the defendant's contacts with the forum...." *Id.* at 414 n. 9, 104 S.Ct. at 1872 n. 9.

The Supreme Court has also declined to address this issue. *See Omni Capital International v. Rudolf Wolff & Co., Ltd.,* 484 U.S. 97, 102 n. 5, 108 S.Ct. 404, 409 n. 5, 98 L.Ed.2d 415 (1987); *Asahi Metal Industry Co. v. Superior Court,* 480 U.S. 102, 113, 107 S.Ct. 1026, 1032-33, 94 L.Ed.2d 92 n. * (1987) (plurality opinion).

Immunities Act).

Other circuits have uniformly held that "[w]hen the personal jurisdiction of a federal court is invoked based upon a federal statute providing for nationwide or worldwide service, the relevant inquiry is whether the respondent has had sufficient minimum contacts with the United States." *In re Application to Enforce Admin. of Subpoenas of S.E.C. v. Knowles,* 87 F.3d 413, 417 (10th Cir.1996) (Securities Exchange Act); *accord Busch v. Buchman, Buchman & O'Brien,* 11 F.3d 1255, 1258 (5th Cir.1994) (Securities Exchange Act); *United Liberty Life Ins. Co. v. Ryan,* 985 F.2d 1320, 1330 (6th Cir.1993) (Securities Exchange Act); *United Elec. Workers v. 163 Pleasant St. Corp.,* 960 F.2d 1080, 1085-86 (1st Cir.1992) (ERISA); *Go-Video, Inc. v. Akai Elec. Co.,* 885 F.2d 1406, 1414-16 (9th Cir.1989) (Clayton Act); *Lisak v. Mercantile Bancorp, Inc.,* 834 F.2d 668, 671-72 (7th Cir.1987) (RICO); *SIPC v. Vigman,* 764 F.2d 1309, 1315 (9th Cir.1985), *rev'd on other grounds sub nom. Holmes v. SIPC,* 503 U.S. 258, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992) (Securities Exchange Act); *Texas Trading & Milling Corp. v. Federal Republic of Nigeria,* 647 F.2d 300, 314 (2d Cir.1981) (Foreign Sovereign Immunities Act); *see also* 4 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1067.1, at 311 & Supp. 80 (1987 & Supp.1996).

This rule is predicated on the well settled principle that "service of process constitutes the vehicle by which the court obtains jurisdiction." *United Elec. Workers,* 960 F.2d at 1085. Courts have reasoned that "a federal statute which permits the service of process beyond the boundaries of the forum state [via a nationwide or worldwide service provision] broadens the authorized scope of personal jurisdiction. Under such a statute, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Go-Video, Inc.,* 885 F.2d at 1414 (citations and internal quotation marks omitted). Where process is served pursuant to a federal statute authorizing nationwide or worldwide service, courts have explained that there is also a constitutional rationale for deeming the relevant forum to be the entire United States in federal question cases:

> When a district court's subject matter jurisdiction is founded upon a federal question, the constitutional limits of the court's personal jurisdiction are fixed, in the first instance, not by the Fourteenth Amendment but by the Due Process Clause of the Fifth Amendment. Inasmuch as the federalism concerns which hover over the jurisdictional equation in a diversity case are absent in a federal question case, a federal court's power to assert personal jurisdiction is geographically expanded. In such circumstances, the Constitution requires

only that the defendant have the requisite "minimum contacts" with the United States, rather than with the particular forum state (as would be required in a diversity case).

*United Elec. Workers,* 960 F.2d at 1085 (citations omitted); *accord Lisak,* 834 F.2d at 671-72.

Additional support for the national contacts approach is found in Fed.R.Civ.P. 4(k)(2), which provides:

> If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state.

"Rule 4(k)(2) thus sanctions personal jurisdiction over foreign defendants for claims arising under federal law when the defendant has sufficient contacts with the nation as a whole to justify the imposition of United States' law but without sufficient contacts to satisfy the ... long-arm statute of any particular state." *World Tanker Carriers Corp. v. M/V Ya Mawlaya,* 99 F.3d 717, 720 (5th Cir.1996) (emphasis omitted); *see also* 4 Wright & Miller, Federal Practice & Procedure §§ 1067.1, 1069 (Supp.1996).

We agree with the rule applied by the other circuits and hereby hold that the applicable forum for minimum contacts purposes is the United States in cases where, as here, the court's personal jurisdiction is invoked based on a federal statute authorizing nationwide or worldwide service of process. Because in this case our personal jurisdiction is invoked based on the applicable federal securities laws, which provide for worldwide service of process,[4] we conclude that the proper forum for minimum contacts analysis is the United States.

In light of the foregoing principles, we must determine whether each of the defendants had sufficient minimum contacts with the United States, and if so, whether exercising personal jurisdiction would offend traditional principles of fair play and substantial justice.

*A. The Corporate Defendant*

Appellant contends that Bosque Puerto Carrillo, the corporate defendant, engaged in

---

*See Knowles,* 87 F.3d at 417. The language of 15 U.S.C. §§ 77v(a) & 78aa authorizes service of process on a defendant in any district "of which the defendant is an inhabitant or wherever the defendant may be found."

sufficient minimum contacts with the United States primarily by (i) placing advertisements and arranging for articles concerning its securities in two airlines' in-flight magazines, (ii) mailing offering materials and application forms directly to United States investors, (iii) maintaining bank accounts in Miami to receive payments from investors, and (iv) mailing at least one stock certificate to a United States investor.[5] Bosque essentially admits that these contacts occurred, but disputes their legal significance.

*1. The Relatedness Prong*

Under the first prong of the minimum contacts inquiry, we find that the alleged contacts are related to, or gave rise to, the causes of action because each of the contacts was a step by which the allegedly fraudulent scheme was carried out. Bosque contends that the SEC has failed to show that the advertisements actually caused any United States investor to purchase Bosque's securities.[6] *See* Brief of Corporate Appellee at 18, 24. This argument fails with respect to the claim under 15 U.S.C. § 77e(c), which forbids making an "offer" to sell unregistered securities regardless of whether the securities are actually purchased, and the claim under 15 U.S.C. § 77q(a)(1), which forbids use of any scheme to defraud in the "offer or sale" of securities.

Bosque's argument on this point also misconstrues our test. Under our case law, "the contacts must be *related to* the plaintiff's cause of action *or* have given rise to it." *See, e.g., Francosteel,* 19 F.3d at 627; *Vermeulen,* 985 F.2d at 1546 (emphasis added). In this case, it is clear that the advertisements were "related to" the causes of action because the advertisements were a means by which Bosque offered and sought to sell its unregistered securities to potential American

---

The SEC also emphasizes that in arranging for favorable articles in *Lacsa's World,* Bosque entered into a contract with a publisher in northern Florida, and that Bosque entered into an advertising contract with American Airlines. Although we have recently held that a contract executed outside the forum is not by itself a sufficient minimum contact, *see Francosteel,* 19 F.3d at 627-28, we consider Bosque's contracts in conjunction with the totality of the circumstances in this case.

This contention is contradicted by the sworn declaration of SEC attorney Michael MacPhail, who stated that two United States investors informed him that they had purchased securities as a result of the advertisements and articles. *See* R1-30, MacPhail Dec. Bosque argues that we may not consider this evidence because it is inadmissible hearsay. We will not address this evidentiary argument because we do not rely on MacPhail's declaration as a basis for decision.

investors.[7]

As to the mailed offerings, Bosque contends that they were simply notifications of further stock offerings that were required by Costa Rican law. However, the status of the offerings under Costa Rican law is irrelevant for our purposes. The fact is the offerings included information and application forms pertaining to Bosque's unregistered securities that were mailed directly to United States investors. Additionally, the money for purchases of these securities was sent to Bosque's Miami bank accounts, which it admittedly maintained "for the convenience of these investors." *See* Brief of Corporate Appellee at 22. Thus, these offerings and bank accounts were related to, and gave rise to, the causes of action for fraudulent offer and sale of unregistered securities because they were the means by which the alleged offers and sales were carried out.

Bosque argues that these bank accounts, by themselves, were not fraudulent and thus did not give rise to the causes of action. This argument overlooks the exact nature of the SEC's allegations. It is not the *existence* of the bank accounts that is alleged to have given rise to the causes of action but rather the *use* of the bank accounts to carry out the sale of unregistered securities to United States investors. The use of these bank accounts was manifestly related to, and gave rise to, the causes of action for fraudulent sale of unregistered securities in the United States. *See Chase & Sanborn,* 835 F.2d at 1346 n. 10 (use of bank accounts in Miami, New York, Chicago, and San Francisco to conduct transactions out of which cause of action arose as well as other transactions constituted sufficient minimum contacts with entire United States and with Florida). When these bank accounts are considered together with the other contacts, it is even clearer that the contacts gave rise to the instant causes of action in the sense that by advertising, offering shares, and accepting payment in this country, Bosque did everything necessary to complete the offer and sales of the unregistered securities here.

*2. Purposeful Availment*

---

Although Bosque argues that the ads were not related to the cause of action because they did not target Americans, a review of the record, drawing all reasonable inferences in favor of the plaintiffs, indicates the contrary. The fact that the ads were placed in American Airlines and in English in *Lacsa's World* obviously indicates that they were directed toward Americans.

Under the second prong of the minimum contacts test, we find that Bosque purposefully availed itself of the privileges and benefits of conducting its activities in the forum because the airline advertisements and articles were reasonably calculated to reach the forum. It is well settled that advertising that is reasonably calculated to reach the forum may constitute purposeful availment of the privileges of doing business in the forum. *See, e.g., World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 295, 100 S.Ct. 559, 566, 62 L.Ed.2d 490 (1980); *Vermeulen,* 985 F.2d at 1549 (citing *Asahi Metal Industry,* 480 U.S. at 112, 107 S.Ct. at 1032); *Morris v. SSE, Inc.,* 843 F.2d 489, 494 (11th Cir.1988); *Runnels v. TMSI Contractors, Inc.,* 764 F.2d 417, 421 (5th Cir.1985); *see also Sculptchair,* 94 F.3d at 631 (marketing products in the forum constitutes purposeful availment). It is clear that the advertisements placed by Bosque in the complimentary magazine of *American* Airlines were reasonably calculated to reach readers in the *American* forum.[8] We also find that the advertisements and favorable articles in *Lacsa's World* were reasonably calculated to be read in the forum, in light of the fact that the ads and articles were in English and that the airline has numerous flights to and from the United States. It is also relevant to the purposeful availment inquiry that the advertisements were published on sixteen occasions in two separate magazines over a span of two years.[9] *See Growden v. Ed Bowlin and Associates, Inc.,* 733 F.2d 1149, 1151-52 (5th Cir.1984) (noting that "how widely and frequently the publications were circulated" was relevant to inquiry as to whether advertising subjected defendants to personal jurisdiction). Thus, construing all reasonable inferences in favor of the plaintiff, we conclude that these advertisements and articles constituted purposeful availment.

---

Bosque argues that the advertisements constituted only fortuitous or random contacts with the United States because they were placed in the in-flight magazines of airlines that fly around the world. We find that it is irrelevant that the advertisements might have reached other forums in addition to the United States. The key point is that advertisements placed by Bosque in the complimentary magazine of American Airlines and ads in English in *Lacsa's World* were clearly calculated to reach the United States. *Cf. Morris,* 843 F.2d at 494 (holding that advertisements in national trade magazines raised a "reasonable inference" that defendant advertised in state of Alabama).

In light of the duration of the advertising campaign and the number of ads published, this case is distinguishable from our decision in *Johnston v. Frank E. Basil, Inc.,* 802 F.2d 418 (11th Cir.1986). In that case we held that placing one advertisement in an Alabama newspaper was not a sufficient connection to the forum.

It has also long been held that direct mailings of solicitation materials to the forum may provide a basis for personal jurisdiction. *See, e.g., McGee v. International Life Insurance Co.,* 355 U.S. 220, 221-24, 78 S.Ct. 199, 200-01, 2 L.Ed.2d 223 (1957) (holding that California court had jurisdiction over out-of-state insurance company based on company's mailing to California resident of reinsurance certificate offering to insure him on same terms as an existing policy he had with another company). Bosque argues that its solicitation activities did not constitute purposeful availment where no continuing relationship with the investors was contemplated,[10] relying on *Sea Lift, Inc. v. Refinadora Costarricense de Petroleo,* 792 F.2d 989, 994 (11th Cir.1986). However, in *Sea Lift* we emphasized that there was no personal jurisdiction because the solicitation was part of a "one-shot operation." *Id.* at 994. By contrast, in this case the district court found that Bosque sent solicitation materials to "previously established" investors, and Bosque emphasizes that it sent offering materials to existing investors. *See* Brief of Corporate Appellee at 14, 25. Thus, by its own admission, Bosque contemplated a continuing relationship with the American investors. Accordingly, we find that the mailings of solicitation materials constituted purposeful availment.

Moreover, Bosque intentionally availed itself of the benefits of United States law by setting up bank accounts to facilitate purchases of the unregistered securities. The applicable case law unequivocally establishes that maintaining bank accounts in the forum for purposes of carrying out the subject transactions constitutes purposeful availment and invocation of the benefits of the forum's laws. *See, e.g., Chase & Sanborn,* 835 F.2d at 1345-47 & n. 10 (conducting transactions that give rise to claims through bank accounts in the forum); *see also Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437, 448, 72 S.Ct. 413, 419-20, 96 L.Ed. 485 (1952) (maintaining bank accounts in the forum); *Knowles,* 87 F.3d at 419 (maintaining brokerage account through which subject transactions were carried out).

Bosque argues that maintaining the bank accounts cannot be considered to be purposeful

---

Alternatively, Bosque argues that the offering materials were not really intended to solicit further purchases but rather were simply notifications required by Costa Rican law. We find this argument to be implausible since application forms were admittedly included. *See* Brief of Corporate Appellee at 9.

availment under the Supreme Court's decision in *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 416-17, 104 S.Ct. 1868, 1872-74, 80 L.Ed.2d 404 (1984). In that case the Court found that acceptance by an out-of-forum defendant of checks drawn by another party on a bank account in the forum did not count as a contact of the defendant with the forum because another party's use of a particular bank account is its own unilateral activity and is not attributable to the defendant. *Id. Helicopteros* is distinguishable because here Bosque itself maintained the bank accounts in the forum in furtherance of the alleged fraudulent scheme, so that its ties through the bank accounts stem from its own objectives rather than another party's unilateral action.

*3. Reasonable Expectation of Being Haled into Court*

Under the third element of the inquiry, we find that Bosque could reasonably have expected to be haled into court in this country because it deliberately set about to sell its unregistered securities to United States residents. The Supreme Court has previously held that defendants whose "intentional ... actions were expressly aimed at California" could reasonably anticipate being haled into court there. *See Calder v. Jones,* 465 U.S. 783, 789-90, 104 S.Ct. 1482, 1486-88, 79 L.Ed.2d 804 (1984); *accord Robinson v. Giarmarco & Bill, P.C.,* 74 F.3d 253, 259 (11th Cir.1996) (defendants could reasonably anticipate being haled into court in Florida where they were "fully aware that their actions or omissions would have a substantial effect in Florida").

Bosque offers only the bare assertion that it "could not possibly have anticipated" being haled into court in the United States based on the advertisements, the mailed offerings, and the bank account. Brief of Corporate Appellee at 29. Bosque's argument is supported by no case law and is contrary to "[c]ommon sense and everyday experience." *See Helicopteros,* 466 U.S. at 416, 104 S.Ct. at 1872-73. Surely Bosque could reasonably expect to be called to account in the United States when it took every necessary step to carry out the sale of unregistered and allegedly fraudulent securities in this country.

*4. Fair Play and Substantial Justice*

Having found that there were sufficient minimum contacts, the question that remains is whether this is "one of those rare cases in which minimum requirements inherent in the concept of

fair play and substantial justice ... defeat the reasonableness of jurisdiction...." *Asahi,* 480 U.S. at 116, 107 S.Ct. at 1034 (Brennan, J., concurring) (internal quotation marks omitted). To make this determination, we examine "the burden on the defendant, the interests of the forum ..., and the plaintiff's interest in obtaining relief." *Vermeulen,* 985 F.2d at 1551 (citation and quotation marks omitted). Bosque alleges that it would be burdened as a foreign national having to litigate in the United States. However, we have previously found that "modern methods of transportation and communication" have ameliorated this sort of burden. *Sculptchair,* 94 F.3d at 632. We have also recognized a forum's "obvious interest in stamping out the type of nefarious economic chicanery alleged." *Id.* Additionally, the plaintiff SEC has a strong interest in litigating this case in this forum because it has no other means of obtaining relief. Thus, we hold that the district court properly had personal jurisdiction over corporate defendant Bosque.

*B. The Individual Defendants*

The individual defendants Stefan Jaeckel and Terence Ennis argue that even if the corporation is properly subject to personal jurisdiction, they, as mere employees, are not subject to such jurisdiction in their personal capacities. This argument overlooks the clear import of the Supreme Court's decision in *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). The Supreme Court held that individual defendants, a magazine editor and reporter, were "primary participants in [the] alleged wrongdoing" of circulating an allegedly libelous article in another state, and "jurisdiction over them is proper on that basis," even though it was their corporate employer that actually published and distributed the tabloid. *Id.* at 790, 104 S.Ct. at 1487-88. The Supreme Court rejected the individual defendants' argument that personal jurisdiction was not proper because "a reporter and an editor ... have no direct economic stake in their employer's sales in a distant State," *id.* at 789, 104 S.Ct. at 1487, noting that "their status as employees does not somehow insulate them from jurisdiction," *id.* at 790, 104 S.Ct. at 1487.

By analogy, the status of Jaeckel and Ennis as officers of the corporation does not somehow insulate them from jurisdiction. Our review of the record, construing all reasonable inferences in favor of the SEC, reveals that the two individual defendants effectively controlled the operations of

the corporation. *See, e.g.,* R2-90, Exh. B, Jaeckel Dep. at 55, 73; R2-90, Exh. C, Ennis Dep. at 68-69. The record reveals that Jaeckel was the founder and original managing executive of Bosque, R2-90, Jaeckel Dep. at 28, 53, 55, and that Ennis became his "full partner," R2-90, Ennis Dep. at 68. Ennis oversaw operations of the plantation, R2-90, Ennis Dep. at 68-69, and, along with Jaeckel, signed the checks to pay the bills, R2-90, Jaeckel Dep. at 73.

The record also shows that Jaeckel and Ennis were primary participants in the alleged contacts with the United States. Specifically, Jaeckel admittedly prepared the text of offering brochures and circulars used to solicit investors. R2-90, Exh. B, Jaeckel Dep. at 46, 77, 163-68. Additionally, Jaeckel acknowledged with respect to the *American Way* ad that "I prepared the ad. I sent the ad down.... I placed the ad." Supp. Jaeckel Dep. at 82-83. He also directed that payment be made for the *American Way* advertisements from the account he and Ennis maintained in Miami. *See* R2-90, Jaeckel Dep. at 97-98. Further, he acknowledged that he provided instructions to United States investors as to how to wire their funds to the Miami bank accounts, R2-90, Jaeckel Dep. at 129-30, and, along with Ennis, kept a personal bank account that contained funds sent by United States investors, Jaeckel Dep. at 50, 97-98.

As to Ennis, besides maintaining the joint bank account in Miami, he admittedly provided the plan for marketing the securities, R2-90, Exh. C, Ennis Dep. at 58; remained in charge of both sales and marketing, *id.* at 64, 68-69, 74, 98; R2-90, Jaeckel Dep. at 55; reviewed the offering materials drafted by Jaeckel, Jaeckel Dep. at 46, 163; and directed that solicitations be sent to investors in the United States, R2-90, Ennis Dep. at 98-99. In light of all this evidence, Jaeckel and Ennis are even more appropriately designated as "primary participants" in the wrongdoing than were the editor and reporter in *Calder.*

By virtue of Jaeckel's and Ennis's control over Bosque's operations and their admitted involvement in the alleged contacts with the United States, we find it appropriate to apply essentially the same minimum contacts analysis to them as to Bosque itself. Thus, we find that the individual defendants had sufficient minimum contacts with the forum and that it would be consistent with notions of fair play to subject them to personal jurisdiction in the United States. Therefore, we

conclude that defendants Ennis and Jaeckel are properly subject to personal jurisdiction in the United States.

III. CONCLUSION

Based on the foregoing discussion, we hold that the district court had personal jurisdiction with respect to all defendants in this action. Accordingly, the district court's order dismissing this action for lack of personal jurisdiction is REVERSED and this case is REMANDED for further proceedings consistent with this opinion.