[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 28, 2003
THOMAS K. KAHN
CLERK

No. 02-12285

D. C. Docket No. 93-00685 CV-WDF

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

Plaintiff-Appellee
Cross-Appellant,

versus

BOSQUE PUERTO CARRILLO,

Defendant-Cross-Appellee,

TERENCE JAMES ENNIS,
RALF STEFAN JAECKEL,

Defendant-Appellants
Cross-Appellees.

Appeals from the United States District Court
for the Southern District of Florida

**(March 28, 2003)**

Before EDMONDSON, Chief Judge, BARKETT and COX, Circuit Judges.

PER CURIAM:

In the absence of a controlling statute, district courts have the discretion to award prejudgment interest to prevailing litigants. In this case, the district court's order awards prejudgment interest to the plaintiff but does not specify the interest rate or the date from which interest accrues, and we must determine whether the order constitutes a final judgment under 28 U.S.C. § 1291. Because the calculation of prejudgment interest in this case is not merely a "ministerial" task, we conclude that the district court's order is not a final judgment. Accordingly, we dismiss this appeal for want of jurisdiction.

## I. BACKGROUND & PROCEDURAL HISTORY

In 1993, the United States Securities and Exchange Commission (SEC) filed a complaint against Bosque Puerto Carrillo ("Bosque"), a Costa Rican corporation, and two former vice-presidents of Bosque, Ralf Stefan Jaeckel and Terence James Ennis, alleging that the defendants fraudulently offered and sold unregistered securities to finance Bosque's operations[1] in violation of federal securities laws. The defendants allegedly promoted unregistered Bosque securities by placing advertisements in the complimentary in-flight magazines of American Airlines and Lacsa Airlines. Jaeckel and Ennis also allegedly arranged for favorable articles about Bosque's securities to appear in the Lacsa Airlines magazine.

---

[1] Bosque owns and operates a teak tree plantation in Costa Rica.

2

The defendants filed a motion to dismiss for lack of personal jurisdiction, and the district court granted the motion. On appeal, this court concluded that the district court had personal jurisdiction with respect to all defendants and remanded the case for further proceedings. *SEC v. Bosque Puerto Carrillo*, 115 F.3d 1540, 1548 (11th Cir. 1997). Following remand, the defendants failed to answer the SEC's complaint, and the district court granted the SEC's motion for a default judgment. The district court entered a judgment against Bosque, Jaeckel, and Ennis that enjoined the defendants from violating federal securities laws and declared them jointly and severally liable to pay $10 million as disgorgement. The district court also ordered the defendants to pay prejudgment interest in the sum of $8,457,802.00 to the SEC.

Bosque filed a motion under Fed. R. Civ. P. 60(b) to set aside the default judgment. The district court granted the motion in part and denied the motion in part; the court denied the motion to set aside the entry of default and denied the motion as to injunctive relief, but granted the motion to set aside the judgment for money damages (disgorgement). The court then held an evidentiary hearing on damages.

During the evidentiary hearing, the SEC stated that the proper method for calculating disgorgement is to determine the total amount that Bosque's United States shareholders paid for their shares and subtract the total value of those shares at the time of their purchase. The SEC offered evidence to support its position that, under

3

this method, the defendants should be ordered to disgorge $15,293,100.00. Furthermore, the SEC asked the court to award $16,023,788.45 in prejudgment interest, which was calculated based on the IRS underpayment rate established in 26 U.S.C. § 6621. In response, Bosque argued that only the individual defendants, Jaeckel and Ennis, should be liable for disgorgement because an order of disgorgement against Bosque would harm the company's current shareholders; the SEC countered that the company shared in the proceeds from the fraudulent sale of unregistered securities and therefore should be liable for disgorgement. In an apparent attempt to contest their liability for securities fraud, Jaeckel and Ennis argued that they had little experience in developing and obtaining investment for this type of business.

The district court entered judgment on March 27, 2002. In its order, the court concluded that Bosque was not liable for disgorgement. The court held that Jaeckel and Ennis were jointly and severally liable for disgorgement in the amount of $1.7 million, the amount of money that was "unaccounted for" in a 1995 audit. Notably, the district court awarded "$1.7 million dollars *plus interest*" and "retain[ed] jurisdiction to determine the amount of the interest." (R.4-166 at 7 (emphasis added).) Jaeckel and Ennis appealed the order, and the SEC filed a cross-appeal.

## II.  ISSUES ON APPEAL

The parties raise several issues on appeal, but prior to oral argument this court sua sponte raised another issue for the parties' consideration: whether the district court's March 27, 2002, order – which appears to contemplate an award of prejudgment interest – constitutes a final judgment for the purposes of 28 U.S.C. § 1291?  We asked the parties to address this issue at oral argument and to file supplemental briefs on this issue following oral argument. After careful consideration of the parties' arguments and their supplemental briefs,  we conclude that the district court's March 27, 2002, order is not a final judgment for the purposes of 28 U.S.C. § 1291.  Because we lack appellate jurisdiction, we do not reach the merits of the issues raised by the parties on appeal.

## III.  STANDARD OF REVIEW

As a court of limited jurisdiction, we must evaluate our appellate jurisdiction sua sponte even if the parties have not challenged it.  *See Rinaldo v. Corbett*, 256 F.3d 1276, 1278 (11th Cir. 2001); *Rembert v. Apfel*, 213 F.3d 1331, 1333 (11th Cir. 2000).

## IV.  CONTENTIONS OF THE PARTIES

The parties agree that the district court's March 27, 2002, order awarding "$1.7 million dollars plus interest" contemplates an award of prejudgment – not

postjudgment – interest. In its supplemental brief, the SEC argues that the district court's failure to calculate the amount of prejudgment interest does not affect the finality of the judgment because the calculation of prejudgment interest in this case is a ministerial task. During the evidentiary hearing, the SEC asked the district court to employ the IRS underpayment rate established in 26 U.S.C. § 6621 to calculate prejudgment interest. Bosque did not challenge the SEC's proposed method for calculating prejudgment interest, and the defendants did not offer an alternative method of calculation. Because the only proposed method for calculating prejudgment interest was provided in the SEC's Prejudgment Interest Report, the SEC contends that prejudgment interest "can be computed mechanically by plugging the disgorgement amount ($1.7 million) into the prejudgment interest formula that the [SEC] supplied to the district court during the remedies trial in this case." (SEC Supp. Letter Br. at 5.) Bosque, Jaeckel, and Ennis agree that only one method for calculating prejudgment interest was proposed to the court and that no objections were made by any party, and therefore only a ministerial calculation of prejudgment interest is necessary.

## V. DISCUSSION

As an initial matter, we agree with the parties that the court's March 27, 2002, order awards prejudgment interest, not postjudgment interest, to the SEC. The

6

prevailing party in this case, the SEC, is statutorily entitled to postjudgment interest under 28 U.S.C. § 1961. The district court does not have any discretion to deny or modify the terms upon which the SEC may receive postjudgment interest under § 1961; section 1961(a) establishes the applicable interest rate and instructs that interest shall be calculated from the date of the entry of the judgment. 28 U.S.C. § 1961(a). If we were to read "$1.7 million dollars plus interest" to award *postjudgment* interest, the court's references to "interest" would be rendered superfluous because, by virtue of the statute, the SEC is already entitled to such interest. *See Student Loan Mktg. Ass'n v. Lipman*, 45 F.3d 173, 176 (7th Cir. 1995) (concluding that a district court order awarding postjudgment interest would be "potentially confusing" because the reference to postjudgment interest would be "wholly superfluous"). Moreover, the district court heard testimony regarding the propriety of awarding prejudgment interest and the calculation of such interest, and we decline to hold that the court's reference to "interest" awards postjudgment interest to the SEC – when such a decision is not within the court's discretion in light of § 1961(a) – while simultaneously denying the SEC's request for prejudgment interest *sub silentio. See id.* at 177. Finally, we note that the court originally awarded the SEC over $8 million in prejudgment interest when the court entered its default judgment against the defendants, and in doing so, the court evinced its willingness to award prejudgment

interest in this case. Thus, it is clear that the court's March 27, 2002, order awards prejudgment interest to the SEC, and we must now consider whether the order is an appealable final judgment.

As a general rule (subject to exceptions not implicated by this case), federal courts of appeals have jurisdiction to review only "final decisions" of lower federal courts. 28 U.S.C. § 1291. A final decision "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233, 65 S. Ct. 631, 633-34 (1945). Although the "final judgment rule" serves many purposes, one of its central objectives is to ensure that this court does not engage in piecemeal appellate review. *See Constr. Aggregates, Ltd. v. Forest Commodities Corp.*, 147 F.3d 1334, 1336 (11th Cir. 1998). If a party seeks to appeal a district court order that does not constitute a "final decision" under § 1291 (and does not fall within an exception to the final judgment rule), we must dismiss the case for lack of appellate jurisdiction.

The final judgment rule does not require district courts to calculate the precise amount of damages in every case, however. This is true even though it might appear that the district court still has something left to do that goes beyond executing the judgment. For instance, in *Turner v. Orr*, 759 F.2d 817 (11th Cir. 1985), we acknowledged that when the district court awarded back pay, the court's failure to

8

calculate the precise amount of back pay did not affect the finality of the court's judgment. *Id.* at 820. On the contrary, we concluded that the calculation that was required to determine the amount of back pay was "purely ministerial in nature" and required only "a simple arithmetic calculation." *Id.* Under these circumstances, we concluded that the court's failure to conduct the ministerial act of calculating the amount of back pay did not prevent the court's order from constituting an appealable final decision under § 1291. *Id.*

Although an award of prejudgment interest differs in substance from an award of back pay, the calculation of an award of prejudgment interest may be just as susceptible to a simple, ministerial arithmetic calculation. The ministerial task of calculating prejudgment interest can be accomplished if the judgment amount, the prejudgment interest rate, and the date from which prejudgment interest accrues have been established. *See Kosnoski v. Howley*, 33 F.3d 376, 379 (4th Cir. 1994). If these three components have been established, the court's failure to calculate the precise amount of prejudgment interest does not prevent the court's order from constituting a final judgment under § 1291. *See id.* However, if the judgment amount, the prejudgment interest rate, or the date from which prejudgment interest accrues is unclear, the calculation of prejudgment interest is no longer a ministerial act and the court's order is not final. *See Commercial Union Ins. v. Seven Provinces Ins. Co.*,

9

217 F.3d 33, 37 (1st Cir. 2000) (concluding that an order that retains jurisdiction to calculate prejudgment interest without determining the date from which prejudgment interest accrues is not a final decision under § 1291).

There is no dispute that the court established the judgment amount in this case: $1.7 million. The central inquiry is whether the court's order embodies a prejudgment interest rate and indicates the time period for accrual. The court's order makes three references to "interest." On two occasions, the court indicates that it has awarded "$1.7 million dollars plus interest." (R.4-166 at 7.) At the end of the court's order, the court states: "The Court retains jurisdiction to determine the amount of interest and to consider motions for fees and costs." (*Id.*) It is clear that the language of the order is absolutely silent regarding the prejudgment interest rate and the time period for accrual, and the parties do not argue that the order, by its terms, establishes these crucial components that would render the calculation of prejudgment interest a ministerial task. As a consequence, the calculation of prejudgment interest is not a mere ministerial task based on the court's March 27, 2002, order.

In an attempt to persuade this court that the district court's order is nonetheless an appealable final decision, the parties contend that the order implicitly adopts the

calculation method proposed by the SEC.[2] We reject this argument because we decline to hold that the court's silence regarding the method of calculation is tantamount to its adoption of the SEC's proposed method. While the court might very well have intended to adopt the IRS underpayment rate and the time period proposed by the SEC, we do not believe, based on the circumstances of this case, that such a conclusion is compelled by the record. If, at a later date, the parties were to ask the court to accomplish the purportedly ministerial task of calculating prejudgment interest, we believe that the court could deviate from the SEC's proposed method – by applying a different interest rate, by employing a different time period for accrual, or both – without departing from the terms of its March 27, 2002, order. And if the district court were to deviate from the SEC's proposed method one or both parties may wish to appeal the court's decision and contend that the court has abused its discretion. *See Indus. Risk Insurers v. M.A.N. Gutehoffnungshütte GmbH*, 141 F.3d 1434, 1447 (11th Cir. 1998) (noting that the decision to grant prejudgment interest, as well as the rate at which interest is awarded, are within the district court's discretion and are reviewed on appeal for an abuse of discretion). This would result

---

[2] The SEC's proposal employs the method for calculating interest set forth in 26 U.S.C. § 6621. The SEC asked the court to calculate prejudgment interest from May 1, 1993 (the first day of the first month after the SEC filed its complaint), to January 31, 2002 (the last day of the month preceding the hearing on damages). (R.4-165 Ex. 2 at 1.)

in precisely the type of piecemeal appellate review that the final judgment rule seeks to avoid. And in this case, the prospect of piecemeal appellate review is particularly striking because the judgment amount is significant ($1.7 million), the time period for accrual may be of great duration (the violations occurred as early as 1987 and the SEC seeks prejudgment interest from May 1, 1993), and, as a consequence, the total amount of prejudgment interest could be substantial and might exceed the amount of disgorgement (as it did under the SEC's proposal presented at the evidentiary hearing). Accordingly, the terms upon which prejudgment interest is awarded may prove to be just as important to the parties as the decision setting the amount of disgorgement that initially prompted both the defendants' appeal and the SEC's cross-appeal.

## VI. CONCLUSION

We hold that the district court's order of March 27, 2002, is not a final judgment under 28 U.S.C. § 1291 because it awards prejudgment interest without specifying the prejudgment interest rate or the date from which interest accrues. Accordingly, we dismiss this appeal for want of appellate jurisdiction.

APPEAL DISMISSED FOR WANT OF JURISDICTION.