TJOFLAT, Circuit Judge,
dissenting:
On July 1, 2010, the District Court sentenced the defendant to a prison term of 163 months, deferred the imposition of mandatory restitution pursuant to 18 U.S.C. § 3664(d)(5) until the identity of the victims and the amount of restitution could be calculated, and entered a “Final Judgment” containing a statement that, upon entering a restitution order, it would enter an “Amended Final Judgment.” Fourteen days after the District Court entered the “Final Judgment,” the defendant’s court-appointed counsel filed a notice of appeal. Four months later, on November 3, 2010, the District Court determined the amount of restitution due and instructed the Government to submit an “Amended Final Judgment” for its approval. The Government failed to do that, and an “Amended Final Judgment” has yet to be entered.
Today, in the absence of a true final judgment, the court has chosen to review the “Final Judgment” the District Court entered on July 1, 2010. In doing so, the court is ignoring the policies underpinning the “final judgment rule,” entertaining an interlocutory appeal contrary to law, and setting the stage for untold institutional mischief. What’s worse, the court is denying the defendant rights protected by the Constitution and Federal Rules of Criminal Procedure 32 and 43.
While the step the court is taking in this case may be well-intentioned, and is urged on by the United States government, it is indefensible. I will explain why it is indefensible after recounting what took place in the District Court and how the U.S. Attorney planted the seeds for today’s decision.
I.
A.
Michael Muzio was indicted in the Southern District of Florida on April 14, 2009, and on April 16 a Magistrate Judge ordered that he be detained pending trial before a jury. His trial began February 10, 2010. Seven days later, the jury found Muzio guilty of one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349; two counts of substantive wire fraud, in violation of 18 U.S.C. § 1343; six counts of securities fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff(a); and two counts of making false statements to agents of the Securities and Exchange Commission and the Federal Bureau of *1261 Investigation, in violation of 18 U.S.C. § 1001(a)(2).
On June 30, 2010, Muzio came before the District Court for sentencing. After overruling Muzio’s objections to the pre-sentence report and entertaining the parties’ sentencing recommendations, the District Court pronounced sentence. It remanded Muzio to the custody of the Attorney General for 163 months,[1] to be followed by three-years’ supervised release.[2] The court then asked the parties whether they had any objections to the sentences or manner in which they were pronounced.[3] They had none. After the court informed Muzio of his right to appeal his convictions and sentences within fourteen days,[4] the Government’s attorney, Assistant U.S. Attorney Karen Roch-lin, inquired whether the court intended to include restitution as part of Muzio’s overall sentence. Almost as an afterthought, she asked:
MS. ROCHLIN: Is the Court willing to consider restitution today or would Your Honor like to set that within 90 days.
THE COURT: The probation officer has advised me, and I reviewed all this, that he’s unable to pay a fine, no fine is imposed. This matter of restitution is something that is — may or may not be required under the all these guideline regulations. Is there something where the Court has to make some sort of— have some evidentiary hearing and make some finding? Is that recommended under all this?
MS. ROCHLIN: Your Honor, my understanding is that restitution is mandatory pursuant to statute[5] and the Court can either impose a restitution order *1262 now or can reset this matter within 90 days from sentencing.
THE COURT: Well, do I have anything here? I have found that the testimony reflected 600 and whatever thousand dollars was the amount that was the subject of this fraud. Is that the amount you’re talking about? Or is there evidence that is — at the end of the day, that is the total amount that was discussed. Is that what you’re referring to?
MS. ROCHLIN: Yes, Your Honor. We would ask the Court to order restitution in the amount of $631,976.80.
THE COURT: And to whom does the government suggest that should be paid?
MS. ROCHLIN: To the victims of the crime as identified by U.S. Probation.
THE COURT: Do we have a list of those people at this point in time?
THE PROBATION OFFICER: No, Your Honor. Probation has not determined the exact victim list, and would appreciate the 90 days hearing to certify and verify with the victims that they have been contacted, what their reported loss amounts are and speak with the agent to determine the most appropriate amount for each victim.
THE COURT: All right. The Court will reserve ruling on the application of the government to have a hearing, a restitution hearing as the government suggests is mandated by law. We will set that hearing — we will schedule that hearing after, after the government has furnished to the probation office an itemized list and details showing whatever the government’s position is with respect to the amount that is due and owing. It would appear to be in the $630,000 range or whatever, but that will depend upon the government’s motion and the replay of the defense, all furnished to the probation office.
We will require that to be done, to be filed within 90 days from today. After that the probation office will conduct their review and analysis and when that is supplied to the Court, the Court will then probably schedule a hearing before U.S. Magistrate to have another substantial evidentiary hearing.
All right then. The government will prepare an order that reflects this 90 day requirement, the briefing schedule and I guess the defendant will have to be brought back from wherever he is or wherever he is assigned, I’m recommending Coleman, and at this point, the defendant is remanded to custody of the United States Marshal.
Doc. 191, at 15-17.[6] (emphasis added).
The District Court signed a form, “Judgment in a Criminal Case,” on July 1, 2010 (the “July Judgment”), which includ *1263 ed Muzio’s sentence of imprisonment and terms of supervised release. The document recited that “[t]he determination of restitution is deferred for (90) days. An Amended Judgment in a Criminal Case (AO 245C) will be entered after such determination.” Doc. 162, at 5.
B.
On July 6, Assistant Federal Public Defender Miguel Caridad, who had represented Muzio throughout the trial and sentencing proceedings, filed a motion to withdraw as Muzio’s attorney. The next day, Muzio moved the District Court for the appointment of counsel. On July 12, the court referred the motions to the Magistrate Judge, and on July 15, while the motions were pending, Caridad filed a notice of appeal. On August 5, the Magistrate Judge granted Caridad’s motion to withdraw[7] and Muzio’s motion for the appointment of counsel, designating Richard *1264 Rosenbaum as substitute counsel.[8]
On August 12, 2010, the District Court referred the restitution matter to the same Magistrate Judge, instructing him “to hold a restitution hearing and submit a Report & Recommendation.” Doc. 189, at l.[9] The Probation Officer thereafter furnished the Magistrate Judge with a memorandum listing the amount of restitution owed each victim, for a total restitution of $627,997.05.
On September 14, 2010, the Magistrate Judge summoned the parties’ attorneys, Rochlin and Rosenbaum, and the Probation Officer, Nichole Laurie, to attend a “Status Conference” on September 29. Doc. 200. The conference was held as scheduled. The record does not contain a transcript of what was said at the conference; what the record does contain is the Clerk’s Minute Entry.[10] The Clerk recorded that Muzio’s “PRESENCE NOT REQUIRED” and checked a box indicating “Defendant ... Not Present.” Doc. 201, at 1. Following the heading “Result of hearing,” the Clerk wrote: “Court will supplement the report and recommendation, with the new figure for Restitution of $627,997.05.” Doc. 201, at 1.
On October 21 — 114 days after Muzio stood before the District Court for sen-fencing — the Magistrate Judge filed a Report and Recommendation recommending that Muzio be ordered to pay $631,976.06. Doc. 208, at l.[11] The report stated that “the undersigned conducted a hearing on this matter on September 29, 2010. At that time, the Court was advised that the United States and defendant are in agreement as to the restitution amount calculated by the Probation Office to be assessed in this case.” Doc. 208, at 1. The Magistrate Judge also noted that Muzio “requests no further hearing on this matter.” Doc. 208, at 4.
Rosenbaum, for Muzio, filed an objection to the Magistrate Judge’s Report and Recommendation on November 1, 2010. In the objection, Rosenbaum submitted that Muzio “objeet[ed] to the Report and Recommendation,” that he “should not be responsible for restitution on these facts and circumstances,” and that he objected on “[ojther grounds to be argued ore tenus.” Doc. 209, at l.[12] He further requested that the District Court refuse to adopt the Report and Recommendation and “deny the Government’s request for restitution.” Doc. 209, at 1. Rochlin responded for the Government on November 3, arguing that, by statute, restitution was mandatory and *1265 that Muzio failed to support his objection with any factual or legal support. Doc. 212, at 2.
That same day, November 3, 2010, the District Court considered the Magistrate Judge’s Report and Recommendation, Rosenbaum’s objections, and Rochlin’s response. Doc. 210, at 1. Rochlin had included with her response a proposed order, which the District Court signed, dated, and entered into the record. The court did so without the presence of Muzio or his attorney. The order stated: “After conducting a de novo review of the record, the Court determined] that the Report contains well-reasoned recommendations” and therefore “affirmed and adopted” the Report and Recommendation “as an order of this Court.” Doc. 210, at l.[13] The order required Muzio to pay restitution in the sum of $631,796.06 to the victims identified in the list attached to the Report and Recommendation and specified the terms of payment and set out a repayment schedule.[14] Doc. 210, at 1.
Also on November 3, the District Court entered a second order on the Magistrate Judge’s Report and Recommendation. Doc. 211.[15] The order stated that the District Court, “having independently reviewed the record, ... conclude[d] that [the Magistrate Judge’s] Report and Recommendation is a thorough and accurate reflection of both the record and the law at issue.” Doc. 211, at l.[16] The second order therefore required Muzio to pay $631,976.06 in restitution, but did not specify the terms of payment or identify the recipients of the restitution.[17] The order also required Rochlin, for the Government, to “PREPARE and SUBMIT a Final Judgment to this Court.”[18] Doc. 211, at 2. Rochlin never did that; consequently, the District Court never entered an “Amended Judgment” as the July Judgment — the judgment imposing a terms of imprisonment — stated that it would.[19]
On November 22, 2010, Muzio, acting pro se, filed with the District Court an “Objection of Restitution Hearing,” stating *1266 that he objected to the September 29 restitution hearing being held in his absence and that he “was prepared to introduce new evidence.” Doc. 216, at 1. He added that
[a]t no time did [he] agree with any amount or method of calculation of amount [of] loss and [that he] objects to [the Magistrate Judge’s Report and Recommendation] where it states defendant agreed to amount [of] loss and victims.
Therefore Defendant requests] this honorable court [to] schedule a restitution hearing where defendant can present evidence to refute Government testimony.
Doc. 216, at 1. On November 29, Rochlin filed a response for the Government, with this statement:
Insofar as the defendant claims he was not present for determinations relating to restitution, his allegations are merit-less. The defendant was present during a hearing on June 8, 2010 when Magistrate Judge Ted E. Bandstra determined the actual amount of loss to victims which was then used to establish the amount of restitution.[20] The defendant complains of not being present on September 29, 2010; however, proceedings on that date involved a status conference, which at most, addressed legal questions. Accordingly, the defendant’s presence was not required on that date. Fed.R.Crim.P. 43(b)(3). Doc. 217, at 3-4 (record citations omitted). It appears from the record that the court did not rule on Muzio’s objection. The objection *1267 and Rochlin’s response simply laid dormant.
On April 28, 2011, Rosenbaum, at Muzio’s direction, filed a motion to withdraw as counsel. The District Court referred the motion to a Magistrate Judge, who held a hearing on June 13.[21] Thereafter, on June 15, the Magistrate Judge granted the motion to withdraw and appointed Phillip Horowitz to serve as Muzio’s appellate counsel.
Before briefing in this appeal commenced, we questioned whether this court had jurisdiction to entertain the appeal and instructed the parties to respond to the following question:
Whether, in light of this Court’s reasoning in Kapelushnik, the premature notice of appeal filed by Muzio [following the July Judgment] ripened into an effective notice of appeal, and, the July 1, 2010, judgment containing an undetermined amount of restitution became the final judgment. United States v. Kapelushnik, 306 F.3d 1090, 1093-94 (11th Cir.2002); Dolan v. United States, [560] U.S. [605], 130 S.Ct. 1533 [2533], 177 L.Ed.2d 108 (2010).
Muzio’s response was mixed. On the one hand, he contended that a final judgment had not been entered and the case should be remanded to the District Court. On the other hand, he argued that the July 15, 2010, notice of appeal ripened into an effective notice of appeal. The Government’s position was that the District Court’s November 3, 2010, order served as an amended final judgment[22] and that the defendant’s premature notice of appeal had ripened into an effective notice of appeal following the entry of that order. We carried the jurisdictional issue with the case[23] After the appeal was fully briefed, we heard oral argument on July 19, 2013.
II.
The “[p]rocedure for the issuance and enforcement of order of restitution,” prescribed in 18 U.S.C. § 3664, required the District Court to “set a date for the final determination of the victim’s losses, not to exceed 90 days after sentencing.” 18 U.S.C. § 3664(d)(5).[24] In this case, the District Court entered its order fixing the amount of restitution 125 days after it sentenced Muzio to prison. As such, the District Court did not comply with the terms of § 3664(d)(5).
In this circuit, the rule used to be that an order of restitution entered more than 90 days after sentencing was invalid, and therefore by operation of law the judgment *1268 became final — without an enforceable restitution order — on the 90th day. United States v. Maung, 267 F.3d 1113, 1122 (11th Cir.2001). Based on Maung, we held that a premature notice of appeal ripened into an effective notice of appeal 90 days after sentencing if the District Court failed to enter an order of restitution. United States v. Kapelushnik, 306 F.3d 1090, 1094 (11th Cir.2002).
As the majority explains, our holding in Maung has been abrogated by the Supreme Court’s decision in Dolan v. United States, 560 U.S. 605, 130 S.Ct. 2533, 177 L.Ed.2d 108 (2010), which held that “a sentencing court that misses the 90-day deadline nonetheless retains the power to order restitution.” Id. at 608, 130 S.Ct. at 2537. In Dolan, as in this case, the District Court entered a judgment after the defendant pled guilty, but left to a later date the amount of restitution to be determined. Id. Because the judgment left restitution open, it was by its nature provisional. After 90 days had passed, the District Court entered a memorandum opinion and restitution order, which required that Dolan pay restitution. Id. at 609, 130 S.Ct. at 2537. The Supreme Court held that, although the District Court had entered the amount of restitution after 90 days of sentencing, § 3664(d)(5) “d[id] not deprive the court of the power to order restitution.” Id. at 611, 130 S.Ct. at 2539.[25]
Therefore, having retained jurisdiction to enter a restitution order, the District Court’s failure to enter an order of restitution within 90 days of Muzio’s sentencing is not fatal. But the Supreme Court’s discussion in Dolan does not illuminate the concerns implicated by this appeal.[26] It is true that the Court stated in dicta that it did “not mean to imply that [it] accepted] the ... premise ... that a sentencing judgment is not ‘final’ until it contains a definitive determination of the amount of restitution.” Id. at 617, 130 S.Ct. at 2542. However, the Court left resolution of that “matter[ ] for another day.” Id., 130 S.Ct. at 2543.
The majority holds that a sentencing judgment is final if it imposes “a term of imprisonment but leav[es] restitution unre *1269 solved.’ ” Majority op. at 1246-47. The July Judgment sentenced Muzio to prison; therefore, it is final. I disagree with the majority’s premise — that an unfinished sentencing process can be reviewed on appeal. In this case, the July Judgment on its face indicates unambiguously that Muzio’s sentencing had not been concluded and thus cannot be final; it is provisional. The majority acknowledges that the July Judgment indicates as much, but nonetheless concludes that it is a final judgment.
The majority opinion does not respond to the question we should be asking' and which we directed the parties to brief: whether the District Court’s November 3, 2010, order ripened Muzio’s premature notice of appeal (filed on July 15, 2010) into an operative notice of appeal, so to enable this court to review the July Judgment and the November 3, 2010, order. As I explain in the next part, the November 3 order did not render the premature notice of appeal operative; hence, we are powerless to entertain this appeal.
III.
We have jurisdiction over “final decisions of the district courts.” 28 U.S.C. § 1291. “In criminal cases, as well as civil, the judgment is final for the purpose of appeal ‘when it terminates the litigation between the parties on the merits’ and ‘leaves nothing to be done but to enforce by execution what has been determined.’ ” Berman v. United States, 302 U.S. 211, 212-13, 58 S.Ct. 164, 166, 82 L.Ed. 204 (1937) (quoting St. Louis, I.M. & S. Ry. Co. v. S. Express Co., 108 U.S. 24, 28-29, 2 S.Ct. 6, 8, 27 L.Ed. 638 (1883)); see also Fed.R.Crim.P. 32(k)(1) (“In the judgment of conviction, the court must set forth the plea, the jury verdict or the court’s findings, the adjudication, and the sentence.”). “Final judgment in a criminal case means sentence. The sentence is the judgment.” Berman, 302 U.S. at 212, 58 S.Ct. at 166.
By its very terms, the July Judgment did not terminate the litigation; rather, it left something to be done — the entry of a final judgment containing a restitution order. It was clear that restitution would be part of Muzio’s sentences; 18 U.S.C. § 3663A mandated it, and the District Court stated that it would comply with that statute. Therefore, when the District Court recessed the June 30, 2010, sentencing proceeding, the prison sentences the court had imposed were provisional. So long as a district court retains jurisdiction to enter an order of restitution as part of the defendant’s sentencing package, the case remains in the court’s bosom, and the court remains at liberty to reexamine, and to alter if appropriate, the other provisions of the sentencing package. See infra part y.
Nor was the sentencing process completed on November 3, 2010, when the District Court entered the order adopting the Magistrate Judge’s Report and Recommendation. Although the order fixed the amount of restitution, the amount was provisional; the court had still not finished its task. According to the District Court, the task would not be finished until Roch-lin prepared and submitted to the court for its consideration an “Amended Final Judgment.” [27] She failed to do that. Consequently, there is no final judgment for us to review. All we have is the court’s No *1270 vember 3, 2010, order. That order cannot be considered the equivalent of a final judgment.
I say this because the District Court failed to comply with fundamental requirements of a sentencing proceeding. We presume that judges follow the law. Together with the November 3 order’s express language that an amended final judgment would be entered, the absence of these sentencing requirements strongly indicates that the Government or District Court should have recognized that the sentencing process was not over.[28]
First and foremost is the fact that Muz-io was not present when the court entered the order purportedly fixing the amount of restitution to be paid. Restitution is part of a defendant’s sentence,[29] and Muz-io had a constitutional right to be present, with counsel, when the court imposed that part of his sentences.[30] See United States v. Huff, 512 F.2d 66, 71 (5th Cir.1975) (“[Sjentencing is, of course, a critical stage of the proceedings against the accused, at which he is constitutionally entitled to be present and represented by counsel.” (citing Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967))).[31] The District Court acknowledged that Muzio had such a right when the restitution issue surfaced during the June 30, 2010, sentencing proceeding. After the court sentenced Muzio to prison for 163 months, Rochlin informed the court that it had to include a restitution order as part of Muzio’s sentences because restitution was mandatory. She asked the court to order restitution of $631,976.80 on the spot, but when the court inquired whether the victims to be paid had been identified, the Probation Officer, Laurie, said that “Probation [had] not determined the exact victim list [and needed] the 90 days hearing to certify and verify with the victims that they [had] been contacted, what their reported loss amounts are and speak with the agent to determine the most appropriate amount for each victim.” Doc. 191, at 16. With that, the court announced that it would “schedule a hearing” to determine that amount and that “the defendant [would] have to be brought back from wherever he is [incarcerated].” Doc. 191, at 17. As it turned out, Muzio was not brought back for the proceeding before the Magistrate Judge; nor was he present when the Dis *1271 trict Court adopted the Magistrate Judge’s recommendation and entered the order requiring Rochlin to prepare and submit to the court a final judgment incorporating a restitution order in the sum of $631,976.06.
Second, in addition to affording Muzio his right to be present, with counsel, when the District Court determined the amount of restitution to be paid, the District Court had to comply with the mandates of Rule 82 of the Federal Rules of Criminal Procedure. Section (i)(1)(A) of Rule 32 required the court to “verify” that Muzio and his attorney had read and discussed the memorandum the Probation Officer submitted to the Magistrate Judge prior to the “Status Conference” held on September 29, 2010, which detailed the amount of restitution owed each victim,[32] and section (i)(4)(A) required the court, before imposing the restitution order, to “provide [Muz-io’s] attorney an opportunity to speak on [Muzio’s] behalf’ and to “address [Muzio] personally in order to permit [Muzio] to speak or present any information to mitigate the sentence.”[33] Cf. United States v. Gilbert, 244 F.3d 888, 924 (11th Cir.2001) (“As [the defendant] was not afforded an opportunity to allocute ..., the purported order of forfeiture entered on that date could not have been part of his sentence.”).[34] Muzio was afforded none of these rights. In short, Muzio’s sentencing — to the extent that it includes restitution — has yet to occur.
*1272 Third, and relatedly, by not providing Muzio with an opportunity to be present, the District Court failed to elicit “fully articulated objections, following imposition of sentence, to its ultimate findings of fact and conclusions of law,” as required by United States v. Jones, 899 F.2d 1097, 1102 (11th Cir.1990). We routinely vacate and remand for resentencing cases in which the district court has failed to comply with Jones. Id. at 1103. The transcript of the June 30 sentencing hearing makes clear that the District Court understood the importance of conforming to the Jones requirement after pronouncing sentence. Surely, then, the court would have realized that another Jones colloquy would be required after it announced its restitution decision.[35]
The record does not explain why Rochlin failed to submit a “Final Judgment to [the] Court” as required by the second restitution order issued on November 3, 2010. Nor does the answer brief the Government filed in this appeal. One reason may be that Rochlin was simply at a loss as to what to do after the court ordered her to prepare and submit a Final Judgment to the court. As a prosecutor, she knew full well that ordering a defendant to pay restitution is a sentencing decision and that the Constitution and Rule 43 required Muzio’s presence, with counsel, in open court as provided in Rule 32 when the court announced its decision.[36] So, instead of suggesting that the court do what the law clearly required, she did nothing. Roeh-lin’s inaction did not transform the District Court’s November 3 order into a final judgment subject to appeal. Her inaction ensured that the District Court never completed the process it began by adopting the Magistrate Judge’s Report and Recommendation.[37]
IV.
The majority never engages in the analysis I put forth in part III. Instead, it *1273 holds that “[b]ased on Supreme Court precedent ... the July Judgment is final for purposes of appeal because it sentenced Muzio to a term of imprisonment.” Majority op. at 1247. The majority then cites a string of Supreme Court decisions, none of which supports the broad proposition that a sentence of imprisonment is sufficient to trigger appellate review when the ease is still within the District Court’s jurisdiction.
A.
The majority contends that “[blinding precedent from the Supreme Court’s decision in Corey is directly on point.” Majority op. at 1248. It is not. The majority’s reliance on Corey v. United States, 375 U.S. 169, 84 S.Ct. 298, 11 L.Ed.2d 229 (1963), is misplaced. In Corey, the defendant was sentenced under a sincere-pealed statute, 18 U.S.C. § 4208 (1958) (repealed 1987), which was titled “Fixing eligibility for parole at the time of sentencing.” Under that statute, “[u]pon entering a judgment of conviction,” the court could sentence the defendant to (1) the minimum term of imprisonment, after which the defendant would be eligible for parole, or (2) the maximum term of imprisonment, with a possibility of parole at the discretion of the U.S. Board of Parole.[38] 18 U.S.C. § 4208(a). Section 4208 provided a third option, which the district court in Corey utilized. Under § 4208(b):
If the court desires more detailed information as a basis for determining the sentence to be imposed, the court may *1274 commit the defendant to the custody of the Attorney General, which commitment shall be deemed to be for the maximum sentence of imprisonment prescribed by law, for a study as described in subsection (c) hereof. The results of such study, together with any recommendations which the Director of the Bureau of Prisons believes would be helpful in determining the disposition of the case, shall be furnished to the court within three months unless the court grants time, not to exceed an additional three months, for further study. After receiving such reports and recommendations, the court may in its discretion: (1) Place the prisoner on probation ... or (2) affirm the sentence of imprisonment originally imposed, or reduce the sentence of imprisonment, and commit the offender under any applicable provision of law. The term of the sentence shall run from date of original commitment under this section.
18 U.S.C. § 4208(b).
As the Supreme Court explained, the district court entered an order committing Corey to the custody of the Attorney General for a study under § 4208(b), Corey, 375 U.S. at 170, 84 S.Ct. at 300, which meant that he was committed for the maximum sentence possible until the court acted again. Over three months later, after considering the reports submitted by the Bureau of Prisons, the District Court entered an order suspending the imposition of Corey’s sentence and placing him on probation for two years. Id. Thereafter, Corey appealed his convictions,[39] and the Court of Appeals dismissed the appeal for want of jurisdiction because it was filed out of time. Id. The Supreme Court reversed, concluding that a defendant sentenced pursuant to § 4208(b) could appeal his convictions following the entry of an order committing him to the custody of the Attorney General for a study or after the later order imposing the defendant’s actual sentence, because “the trial judge sentences a convicted defendant not once, but twice.” Id. at 172, 84 S.Ct. at 301.
A close reading of Corey confirms that § 4208(b)’s unique procedures created a situation whereby the initial commitment “sufficiently satisfies conventional requirements of finality for purposes of appeal.” Id. at 174, 84 S.Ct. at 302. By contrast, Muzio has not been sentenced twice; he has not been sentenced at all. Muzio would be sentenced after the District Court determined the amount of restitution due in a sentencing hearing conducted in accordance with Rule 32 and then entered a final judgment. The District Court acknowledged as much on June 30, 2010, when it announced that it would determine the restitution to be ordered at a later hearing to be held for that purpose.
A sentence that includes imprisonment and restitution is part of one complete sentencing package. These elements cannot be considered independently; they are interrelated. Until the sentencing package is complete, the sentencing process is necessarily unfinished. Finality, which was present in Corey, is lacking here.
The other cases relied on by the majority fare no better. In Berman v. United *1275 States, 302 U.S. 211, 58 S.Ct. 164, 82 L.Ed. 204 (1937), the Court of Appeals dismissed the defendant’s appeal on the ground that the District Court’s judgment was interlocutory — because the court had suspended the execution of the defendant’s sentence, a term of imprisonment, and placed him on probation. Id. at 212, 58 S.Ct. at 165-66. The Supreme Court reversed.
[T]he imposition of the sentence was not suspended, but only its execution. The sentence was not vacated. It stood as a final determination of the merits of the criminal charge. To create finality it was necessary that petitioner’s conviction should be followed by sentence but when so followed the finality of the judgment was not lost because execution was suspended.
Id., 58 S.Ct. at 166 (citation omitted). Likewise, in Korematsu v. United States, 319 U.S. 432, 63 S.Ct. 1124, 87 L.Ed. 1497 (1943), the defendant was convicted and the district court, at sentencing, suspended the imposition of sentence and placed the defendant on probation. Id. at 432-43, 63 S.Ct. at 1124-25. The Supreme Court concluded that the order was appealable to the circuit court because “[t]he probationary surveillance is the same whether or not sentence is imposed.” Id. at 434, 63 S.Ct. at 1125.
Cobbledick v. United States, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940), barely deserves mention, but because it features prominently in the majority’s opinion, I feel compelled to explain why it is inapposite. According to the majority, Cobbledick explains that “even though delays and piecemeal litigation may result, an interlocutory appeal in a criminal case is permissible when the alternative is to force a party to ‘abandon [his] claim or languish in jail.’” Majority op. at 1249 (quoting Cobbledick, 309 U.S. at 328, 60 S.Ct. at 542). This representation of Cob-bledick is, simply, inaccurate. And the Cobbledick language the majority quotes, while colorful, is severely lacking in context.
In Cobbledick, grand jury witnesses appealed a district court’s order denying their motions to quash subpoenas. Id. at 324, 60 S.Ct. at 540. The Ninth Circuit treated the order as interlocutory and dismissed the appeal for lack of a final judgment. Id. at 324, 60 S.Ct. at 540-41. The Supreme Court affirmed. Id. at 330, 60 S.Ct. at 543.
In discussing why the District Court’s denial of the motion to quash did not warrant interlocutory review, the Supreme Court noted that “[w]hatever right [the grand jury witness] may have requires no further protection ... until the witness choses to disobey and is committed for contempt.” Id. at 328, 60 S.Ct. at 542. Once a witness refuses to testify and is held in contempt, his “situation becomes so severed from the main proceeding as to permit an appeal.” Id. The Court acknowledged that holding a witness in contempt and permitting an appeal “may involve an interruption of the trial or of the investigation. But not to allow this interruption would forever preclude review of the witness’s claim, for his alternatives are to abandon the claim or languish in jail.” Id.
In other words, Cobbledick does not stand for the broad proposition that “we need not insist on finality at all ... if the cost is indefinitely depriving imprisoned parties of their right to appeal.” Majority op. at 1253. Far from it. Cobbledick speaks to the choice witnesses face when refusing to testify and the fact that our system of criminal justice will tolerate the *1276 delay of the criminal process that ensues from exercising the right to challenge a contempt order in an independent proceeding. A contempt proceeding against a grand jury witness is entirely separate from the underlying criminal prosecution. Once a witness is held in contempt and sanctioned, that order is final; hence, the right to appeal. Contrary to the majority’s contention, Cobbledick has absolutely nothing to do with the case at hand.[40]
The majority reads the statement “when discipline has been imposed, the defendant is entitled to review,” Korematsu, 319 U.S. at 434, 63 S.Ct. at 1125, far too broadly. Imprisonment itself is not a trigger for appellate review. As in Corey, in Berman and Korematsu sentencing was complete. Here it is not. That is, the July Judgment lacks the finality the majority claims it possesses. By its own terms, there was more to be done, and as such the July Judgment is not independently appealable. And, as I have explained above, the sentencing process was not concluded by the November order. Therefore, we should dismiss this appeal.
B.
As an apparent alternative holding, the court holds that a defendant has a right to appeal “as soon as he begins serving a sentence of imprisonment” even though restitution has yet to be ordered. Majority op. at 1256. This statement implies that a defendant who has not begun serving his sentence of imprisonment — because he has been admitted to bail pending sentencing — may not appeal until the issue of restitution has been resolved and a final judgment is entered.[41] Treating a judgment as final depending on whether the defendant is in custody or has been released on bail makes no sense.[42] What *1277 seems to concern the majority is the District Court’s delay in resolving the restitution issue — that Muzio, sitting in jail, is, in effect, being punished for the delay.[43] The delay is the result of Rochlin’s failure to prepare and submit to the District Court an amended final judgment, the court’s failure to enter one on its own initiative, and Muzio’s multiple requests for new representation. Putting Muzio’s requests for new representation aside, if the court’s delay in completing its sentencing task was causing Muzio undue prejudice, he could avoid the prejudice by seeking a writ of mandamus requiring the District Court to do what the law required: convene a Rule 32 hearing, consider the amount of restitution the evidence required, and determine whether to make final the prison sentences provisionally imposed on June 30, 2010.
V.
Finally, after conjuring up a jurisdictional basis for entertaining this appeal, the majority “affirmfs] Muzio’s sentence^] and conviction[s], without commenting on the aspects of his sentenced] related to restitution.” Majority op. at 1256. Because the District Court has retained jurisdiction over this case, the majority, at least to the extent that it is reviewing Muzio’s prison sentences,[44] is reviewing an interlocutory order[45] We have jurisdiction to review “final decisions of the district courts.” 28 U.S.C. § 1291 (emphasis added). We also have jurisdiction to review “final sentence[s]” of the district courts. 18 U.S.C. § 3742 (emphasis added).[46] As the Supreme Court has observed, the “policy” underpinning § 1291 “is inimical to piecemeal appellate review of trial court deci *1278 sions which do not terminate the litigation, and ... this policy is at its strongest in the field of criminal law.” United States v. Hollywood Motor Car Co., 458 U.S. 263, 265, 102 S.Ct. 3081, 3082, 73 L.Ed.2d 754 (1982); see also SEC v. Carrillo, 325 F.3d 1268, 1272 (11th Cir.2003) (“Although the ‘final judgment rule’ serves many purposes, one of its central objectives is to ensure that this court does not engage in piecemeal appellate review.”). So, too, the policy underpinning § 3742.
An interlocutory order is considered “final,” and thus subject to appellate review, where the “order ... conclusively determine[s] the disputed question, resolve[s] an important issue completely separate from the merits of the action, and [is] effectively unreviewable on appeal from a final judgment.” Coopers & Lybrand v. Livesay, 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978). However, the Supreme Court has carefully circumscribed the situations in which an appeal can be taken of an interlocutory order in a criminal case. I have found only three in the Court’s jurisprudence. In each of the cases, the Supreme Court departed from the final judgment rule because the appeal involved “an asserted right the legal and practical value of which would be destroyed if it were not vindicated before trial.” United States v. Hollywood Motor Car Co., 458 U.S. 263, 266, 102 S.Ct. 3081, 3083, 73 L.Ed.2d 754 (1982) (quoting United States v. MacDonald, 435 U.S. 850, 860, 98 S.Ct. 1547, 1552, 56 L.Ed.2d 18 (1978)). An interlocutory order in a criminal case is considered “final,” and subject to appellate review at the defendant’s behest, where the order denies the defendant’s motion to reduce bail, see Stack v. Boyle, 342 U.S. 1, 6, 72 S.Ct. 1, 4, 96 L.Ed. 3 (1951); denies the defendant’s motion to dismiss the indictment on Double Jeopardy grounds, see Abney v. United States, 431 U.S. 651, 659, 97 S.Ct. 2034, 2040, 52 L.Ed.2d 651 (1977); or denies a U.S. Congressman’s right to immunity from prosecution on Speech and Debate Clause grounds, see Helstoski v. Meanor, 442 U.S. 500, 508, 99 S.Ct. 2445, 2449, 61 L.Ed.2d 30 (1979). These orders are appealable because they do not involve the merits of the criminal prosecution and would be effectively unreviewable on appeal from the final judgment.
A.
Nothing in the Supreme Court decisions the majority has cited counsels a need to review Muzio’s convictions and prison sentences at this point in time. Why? Because this court will review them after the District Court resolves the restitution issues following a Rule 32 hearing and enters an amended final judgment. In the mine run case, where the court imposes a prison sentence and retains jurisdiction to enter a restitution order later, the court may, after deciding to include restitution as part of the defendant’s sentencing package,[47] find it necessary to revisit the prison sentence in order to comply with the com *1279 mand of the Sentencing Reform Act of 1984, 18 U.S.C. § 3553(a), that the defendant’s sentence be “sufficient, but not greater than necessary, to comply with the purposes” of sentencing. In a case where the defendant’s imprisonment is implicated, those purposes include the need “to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense”; “to afford adequate deterrence to criminal conduct”; and “to protect the public from further crimes of the defendant.” 18 U.S.C. § 3553(a)(2)(A)-(C). The court must also consider “the need to provide restitution to any victims of the offense.” 18 U.S.C. § 3553(a)(7).
It is not difficult to conjure a case in which a restitution calculation made at a hearing held following the imposition of a provisional prison sentence will require the court to reconsider such sentence. District courts, in determining “the sentence to be imposed,” are directed to consider the sentencing factors listed in 18 U.S.C. § 3553(a), one of which is the need for restitution. 18 U.S.C. § 3582. Suppose the term of imprisonment is driven by the victims’ losses calculated under U.S.S.G. § 2B1.1(b), the same losses that will be taken into account in fixing the amount of restitution. If the court defers its restitution determination for, say, 90 days, it may turn out that the amount of restitution actually due (after the Probation Office has an opportunity to determine the full extent of the victims’ losses) is much higher or lower than the losses fixed by § 2B1.1(b). As a result, the court might conclude that the term of imprisonment should be adjusted because the § 2Bl.l(b) calculation was erroneous. Although in most cases, the restitution the court orders may not provide a basis for reducing the length of imprisonment needed to satisfy § 3553(a)(2)(A)-(C)’s purposes, we have indicated that “extraordinary restitution, whether paid before or after adjudication of guilt, may, in the unusual case, support a departure from the guidelines.” United States v. Kim, 364 F.3d 1235, 1238 (11th Cir.2004).[48]
The majority’s holding that Muzio’s sentences are renewable now applies not only *1280 to this case, but to others yet to come down the pike. Suppose a scenario like the one here; we affirm the defendant’s convictions and sentences of imprisonment and leave for another day the review of a restitution order.[49] Suppose further that, after our mandate issues and the case is back in the district court, the court, in imposing restitution, reassesses the provisional sentences of imprisonment and decides to reduce their terms. Would the law-of-the-case doctrine preclude it from doing so?[50] Not if this court’s affirmance of the sentences is provisional. And who would have the last word on whether it is provisional? Not the district court. This court would decide. Yet the majority provides no guidance today for the courts who will have to grapple with its decision.
B.
The majority argues that in a cases like Muzio’s, where the District Court defers the entry of an order of restitution pursuant to 18 U.S.C. § 3664(d)(5), the appeal of the defendant’s conviction and provisional sentence should go forward prior to the entry of the restitution order because of “the possibility that defendants whose initial sentences include a deferred order of restitution will be denied their right to appeal indefinitely.” Majority op. at 1246. The Majority overstates the gravity of this problem. As the Supreme Court noted in Dolan,
the defendant normally can mitigate any harm that a missed deadline might cause — at least if, as here, he obtains the relevant information regarding the restitution amount before the 90-day deadline expires. A defendant who fears the deadline will be (or just has been) missed can simply tell the court, which will then likely set a timely hearing or take other statutorily required action. Though a deliberate failure of the sentencing court to comply with the statute seems improbable, should that occur, the defendant can also seek mandamus.
Dolan, 560 U.S. at 615-16, 130 S.Ct. at 2541 (citations omitted).
Moreover, not every delay is cause for concern. Suppose two cases. In both cases, defense counsel, in order to protect the defendant’s right to appeal, files a notice of appeal within 14 days of the entry *1281 of the provisional final judgment.[51] In the first case, the defendant has been released on bail pending appeal and whatever time the district court takes to rule on the restitution issues suits him just fine. As long as he is at liberty, the district court can take as much time as it wants.[52] Meanwhile, the delay isn’t bothering the Government. So, why in the first case, should this court order the parties to brief and prosecute an interlocutory appeal? Since neither side wants to go forward, the assumption is that justice is being served. Perhaps the defendant is cooperating with the Government and both sides want the case held in abeyance for the time being. But that is just one reason why they would want the appeal stayed. The point is that we needn’t create an exception to the final judgment rule and require the parties to go forward.
In the second case, the defendant is in custody. His lawyer advises him that two appeals — an interlocutory appeal from the provisional final judgment and an appeal from the final sentence under 18 U.S.C. § 3742(a) — are not in his best interests (for the reasons I have explained). If counsel advises the defendant that there is a good chance that his conviction will be reversed, counsel will be urging the district court to resolve the restitution issues and enter a final judgment. And the Government might move the court to conclude the sentencing as well, because it wants to appeal the defendant’s sentence, under 18 U.S.C. § 3742(b). The upshot is that neither side will want to undergo two appeals in the second case.
VI.
I would be remiss if I did not take a moment to explain how the cause of the problem in this case lies squarely at the feet of Congress. In short, 18 U.S.C. § 3664(d)(5) is unnecessary and immensely misguided. By allowing the district courts to bifurcate the sentencing proceeding, with the imposition of the restitution part of the sentence being delayed for as much as 90 days after the proceeding begins, Congress has created a scheme that puts the sentencing judge in an unviable position of wasting scarce judicial resources. Moreover, the holding two separate sentencing hearings creates the impression that the second hearing is only for show.
As I have already explained, constitutional law, statutory and rule-based directives, and precedent require that a defendant be present and given the opportunity to speak during sentencing. Therefore, when the sentencing proceeding is bifurcated and, as here, the defendant is in custody, the Government incurs the expense of transporting the defendant from the place of his incarcer *1282 ation to the courthouse a second time.[53] Moreover, holding two sentencing hearings when one would suffice wastes judicial time and parajudicial resources.
Holding two hearings creates still another problem. The second hearing — which should be the main event since it is where the sentencing package is finally put together — may turn out to be perfunctory due to the court’s reluctance to back track and abandon findings it made at the first hearing. If that occurs, what is the defendant to make of his Rule 32 right to be present and “to speak or present any information to mitigate the sentence”? Is it merely window dressing?
Congress ought to go back to the drawing board and rework 18 U.S.C. § 3664(d)(5). Rather than allowing a court to hold an initial sentencing hearing, impose a provisional sentence, and then determine and impose restitution 90 days later, district courts should be permitted to defer the entire sentencing process until the parties and the Probation Office have presented the court with a complete picture of the amount of loss and ascertainable victims. That way, we would not have this problem of provisional and final sentences, and the embarrassing scenario this case depicts could have been avoided.
VII.
In the introduction to this opinion, I said that the position the court is taking today ignores the policies underpinning the final judgment rule. The preceding discussion makes this clear. In entertaining an interlocutory appeal from a provisional sentence, this court either (1) precludes the District Court, after determining that restitution is to be part of Muzio’s sentences, from exercising its jurisdiction to reassess the provisional sentences and to modify them to the extent the § 3553(a) sentencing factors require, or (2) invites the District Court to exercise such jurisdiction, in which case this court’s affirmance of Muz-io’s prison sentences may be rendered provisional. Under either scenario, the District Court’s amended final judgment will be subject to an appeal — by the defendant or the Government — under 18 U.S.C. § 3742.
The United States has urged the court to entertain this appeal on the merits. In its response to the question of whether we had jurisdiction to do so, it stated that “the notice of appeal was timely to appeal the judgment and the restitution order.” Gov’t Juris. Resp. at 7. And its brief concluded with the statement: “the district court’s decision should be affirmed.” Gov’t Br. at 60. In the introduction, I said that this court’s, and the Government’s, position is indefensible. The most shocking to me of all is the U.S. Attorney’s position before the District Court after it received the Magistrate Judge’s Report and Recommendation. The U.S. Attorney stood by while the District Court imposed a restitution order without convening a Rule 32 sentencing hearing and having Muzio present with counsel — in blatant derogation of his rights under the Constitution and Rules 32 and 43. And he asked this court to affirm the restitution order in the face of plain error.
The majority abdicates our responsibility to decline to exercise appellate jurisdiction over cases for which a final judgment *1283 has not been entered. Because the majority reaches a conclusion at odds with the “general rule [that] federal courts of appeals have jurisdiction to review only ‘final decisions’ of lower federal courts,” Carrillo, 325 F.3d at 1272 (quoting 28 U.S.C. § 1291), I dissent.

. The court imposed concurrent sentences on all counts — 163 months on the conspiracy, wire-fraud, and securities-fraud counts, and 60 months on the false-statement counts.

. The court also ordered Muzio to pay $1,100 in special assessments.

. United States v. Jones, 899 F.2d 1097, 1102 (11th Cir.1990), overruled in part on other grounds by United States v. Morrill, 984 F.2d 1136, 1137 (11th Cir.1993), requires a district court “to elicit fully articulated objections, following imposition of sentence, to the court’s ultimate findings of fact and conclusions of law.”

. See generally Fed. R.App. P. 4(b)(1) ("In a criminal case, a defendant’s notice of appeal must be filed in the district court within 14 days after the later of: (i) the entry of either the judgment or the order being appealed; or (ii) the filing of the government’s notice of appeal.”).

. 18 U.S.C. § 3663A, "Mandatory restitution to victims of certain crimes,” states, in pertinent part:
(a)(1) Notwithstanding any other provision of law, when sentencing a defendant convicted of an offense described in subsection (c), the court shall order, in addition to ... any other penalty authorized by law, that the defendant make restitution to the victim of the offense or, if the victim is deceased, to the victim’s estate.
(c)(1) This section shall apply in all sentencing proceedings for convictions of, or plea agreements relating to charges for, any offense—
(A) that is—
(ii) an offense against property under this title, or under section 416(a) of the Controlled Substances Act (21 U.S.C. 856(a)), including any offense committed by fraud or deceit;
(3) This section shall not apply in the case of an offense described in paragraph (l)(A)(ii) if the court finds, from facts on the record, that—
(A) the number of identifiable victims is so large as to make restitution impracticable; or
(B) determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to *1262 provide restitution to any victim is outweighed by the burden on the sentencing process.
(d) An order of restitution under this section shall be issued and enforced in accordance with [18 U.S.C. § ] 3664 [“Procedure for issuance and enforcement of order of restitution”].
(emphasis added).

. I assume that the District Court intended to follow the "Procedures for issuance and enforcement of restitution” set out in 18 U.S.C. § 3664. Section 3664 states, in pertinent part:
(a) For orders of restitution under this title, the court shall order the probation officer to obtain and include in its presentence report, or in a separate report, as the court may direct, information sufficient for the *1263 court to exercise its discretion in fashioning a restitution order. The report shall include, to the extent practicable, a complete accounting of the losses to each victim, any restitution owed pursuant to a plea agreement, and information relating to the economic circumstances of each defendant. If the number or identity of victims cannot be reasonably ascertained, or other circumstances exist that make this requirement clearly impracticable, the probation officer shall so inform the court.
(b) The court shall disclose to both the defendant and the attorney for the Government all portions of the presentence or other report pertaining to the matters described in subsection (a) of this section. (c) The provisions of this chapter, chapter 227 ["Sentences”], and Rule 32(c) of the Federal Rules of Criminal Procedure ["Sentencing and Judgment”] shall be the only rules applicable to proceedings under this section.
(d)
(5) If the victim's losses are not ascertainable by the date that is 10 days prior to sentencing, the attorney for the Government or the probation officer shall so inform the court, and the court shall set a date for the final determination of the victim’s losses, not to exceed 90 days after sentencing....
(6) The court may refer any issue arising in connection with a proposed order of restitution to a magistrate judge or special master for proposed findings of fact and recommendations as to disposition, subject to a de novo determination of the issue by the court.
ffi”
(2) Upon determination of the amount of restitution owed to each victim, the court shall, pursuant to section 3572, specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid, in consideration of—
(A) the financial resources and other assets of the defendant, including whether any of these assets are jointly controlled;
(B) projected earnings and other income of the defendant; and
(C) any financial obligations of the defendant; including obligations to dependents. (3)(A) A restitution order may direct the defendant to make a single, lump-sum payment, partial payments at specified intervals, in-kind payments, or a combination of payments at specified intervals and in-kind payments.
(B) A restitution order may direct the defendant to make nominal periodic payments if the court finds from facts on the record that the economic circumstances of the defendant do not allow the payment of any amount of a restitution order, and do not allow for the payment of the full amount of a restitution order in the foreseeable future under any reasonable schedule of payments.

. The Magistrate Judge’s order stated,
The Court finding that the relationship between the Federal Public Defender’s Office and this defendant has broken down resulting in a lack of trust and confidence by defendant in his current representation. While the Court finds no insufficiency in the representation of defendant by his current court-appointed counsel, the Court *1264 nevertheless finds it in the interests of justice to appoint substitute counsel for this defendant for all further purposes.
Doc. 187, at 2.

. The Magistrate entered the order following an August 4 hearing on the motions. Muzio was present at the hearing. Doc. 186. He was brought to the hearing pursuant to a writ of habeas corpus ad testificandum issued by the Magistrate Judge. Doc. 177.

. 18 U.S.C. § 3664(d)(6) authorizes a district court to refer restitution issues to a magistrate judge.

. The Minute Entry indicates that a court reporter was present at the conference.

. According to the Magistrate Judge’s Report and Recommendation, the Probation Office located an additional victim after submitting the initial memorandum to the Magistrate Judge; thus the higher number.

. Nothing in the record explains why the Magistrate Judge would state in his Report and Recommendation that Muzio “requests no further hearing on this matter,” only to have Rosenbaum 10 days later ask the District Court for a hearing in which he could present oral argument in support of his objections to the Report and Recommendation.

. 18 U.S.C. § 3664(d)(6) required the District Court to make a de novo determination of the Magistrate Judge’s determination. Since a transcript of the September 29, 2010, status conference before the Magistrate Judge — -where the amount of restitution due the respective victims was determined — was not made, I do not know what record the District Court was referring to when it stated that it "conduct[ed] a de novo review of the record."

. The order required Muzio, while incarcerated, to pay "10% of the wages earned” working in a "Federal Prison Industries (UNICOR) job” and "$25 per quarter” if he does not work in a UNICOR job, and while on release from incarceration, "10% of monthly gross earnings, until such time as the Court may alter that schedule in the interests of justice.” Doc. 210, at 2.

. The record does not explain why the court to entered a second order on the Report and Recommendation.

. As indicated in note 13, supra, I am unable to find what the court was referring to when it stated that it had "independently reviewed the record.”

. 18 U.S.C. § 3664(f)(2) requires a judge to "specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid.”

. As indicated above, the District Court issued two orders on November 3, 2010. My reference to the court’s November 3, 2010, order in the following discussion is to the second order entered on November 3, 2010, not the first.

. Because there is no transcript of the September 29, 2010, Status Conference before the Magistrate Judge, Muzio’s appointed appellate counsel, Phillip Horowitz, was denied the opportunity to review the "record” on which the District Court based its de novo review. As the Supreme Court has explained, "when, as here, new counsel represents the *1266 indigent on appeal, how can he faithfully discharge the obligation which the court has placed on him unless he can read the entire transcript? His duty may possibly not be discharged if he is allowed less than that.” Hardy v. United States, 375 U.S. 277, 279-80, 84 S.Ct. 424, 426-27, 11 L.Ed.2d 331 (1964). To that end, the Court Reporter Act requires that a reporter "shall ... recordf ] verbatim by shorthand, mechanical means, electronic sound recording, or any other method ... (1) all proceedings in criminal cases had in open court.” 28 U.S.C. § 753(b). “[I]f the defendant is represented on appeal by an attorney who did not participate in the trial, a new trial is necessary if there is a substantial and significant omission from the trial transcript.” United States v. Preciado-Cordobas, 981 F.2d 1206, 1212 (11th Cir.1993).
In this case, Horowitz had no way to reconstruct precisely what was said during the Status Conference and what the District Court examined in conducting the de novo review of the record. This "substantial and significant omission” from the record, United States v. Charles, 313 F.3d 1278, 1283 (11th Cir.2002), made it exponentially more difficult for counsel to effectively allege error in the restitution hearing procedure. "[T]he fact that his new appellate counsel is foreclosed from examining for possible error a substantial and crucial portion of the trial renders illusory his right to appeal.” United States v. Selva, 559 F.2d 1303, 1305 (5th Cir.1977).

. The June 8 hearing was held for the purpose of reviewing prior to the scheduled June 30 sentencing proceeding the loss calculation reflected in the Probation Office’s presentence report. At the June 30 proceeding, the probation officer who prepared the report, Nichole Laurie, stated that "[p]robation has not determined the exact victim list, and would appreciate the 90 days hearing to certify and verify with the victims that the have been contacted, what their reported loss amounts are and speak with the agent to determine the most appropriate amount for each victim.” Doc. 191, at 16. It is apparent that Magistrate Judge Bandstra's resolution of the restitution issues failed to satisfy the District Court on June 30, which explains why the District Court continued the sentencing hearing. Cf. United States v. Patterson, 595 F.3d 1324, 1327 (11th Cir.2010) ("While the Mandatory Victims Restitution Act requires a judge to order restitution to compensate the full amount of each victim’s losses, it does not require restitution to match the loss figure used for sentencing. Indeed, the amounts of *1267 loss and restitution can and do differ.” (citations omitted)).

. Muzio was present at the hearing. Doc. 255. He was brought to the hearing pursuant to a writ of habeas corpus ad testificandum issued by the Magistrate Judge. Doc. 242.

. The Government took this position even though the November 3, 2010, order is an interlocutory order. That is, until the District Court entered an amended final judgment, the entire case remained before it, and it could, at least in theory, revisit the prison sentences imposed on July 1, 2010.

. In our order carrying the jurisdictional issue, we instructed the parlies that they could, but were not required to, further address the jurisdictional issue in their merits briefs.

. 18 U.S.C. § 3664(d)(5) provides, in pertinent part:
If the victim's losses are not ascertainable by the date that is 10 days prior to sentencing, the attorney for the Government or the probation officer shall so inform the court, and the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing.

. Although the Court held that 18 U.S.C. § 3664(d)’s 90-day deadline is not “jurisdictional,” it did so in the sense that a district court's failure to abide by the deadline does not automatically deprive the court of the power to order restitution. See Dolan, 560 U.S. at 611, 130 S.Ct. at 2538-39. If the District Court retained the power to order restitution, it necessarily retained jurisdiction over the case.

. From its docket sheet in Dolan, I note that the District Court did not enter an amended final judgment after it issued its memorandum opinion and restitution order. Instead, Dolan filed a notice of appeal from the opinion and order. He did not seek to appeal the initial, provisional judgment. Although neither the Tenth Circuit nor Supreme Court discussed whether they had jurisdiction to entertain Dolan’s case, it is clear that both courts treated the memorandum opinion, restitution order, and the terms of the provisional judgment as a final judgment since Dolan's case had remained in the District Court’s bosom in the interim, and the memorandum opinion and order indicated that the court considered that the entry of the order closed the case.
In contrast, Muzio filed his notice of appeal prematurely, after the District Court entered the July Judgment and before it acted on its intention to order restitution. And, unlike the situation in Dolan, here the District Court's November 3 restitution order expressly indicated that the court would enter an amended final judgment. Thus, while in Dolan the District Court’s task was complete, here it was not because the District Court never entered an amended final judgment, as it stated it would.

. And as I point out below, the task would not be finished until the District Court convened and held a hearing that complied with Fed.R.Crim.P. 32(i)(4) and adjudicated the amount of restitution to Muzio was to pay.

. I do not mean to suggest that the defects in the sentencing process would render an otherwise final judgment not final. Clearly we would have jurisdiction to entertain the appeal of a final judgment imposed in violation of the defendant’s constitutional right to be present; in that case we would vacate the judgment and remand the case, for resentenc-ing. In the instant case, the flaws in sentencing process lend further support to the court’s statement at the conclusion of the June 30 proceeding that Muzio would have to be present when the court determined the amount and recipients of restitution to be paid before sentencing would be complete and the court would enter an amended final judgment, which would enable our review.

. 18 U.S.C. § 3556, "Order of restitution,” states: “The court, in imposing a sentence on a defendant who has been found guilty of an offense shall order restitution in accordance with section 3663A, and may order restitution in accordance with section 3663.”

. This right is also codified in Federal Rule of Criminal Procedure 43, “Defendant’s presence.” That rule states, in pertinent part: "Unless this rule ... provides otherwise, the defendant must be present at ... sentencing.” Fed.R.Crim.P. 43(a)(3).

. In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

. See Fed.R.Crim.P. 32(i)(1)(A) (“At sentencing, the court ... must verify that the defendant and the defendant’s attorney have read and discussed the presentence report and any addendum to the report....”).

. Federal Rule of Criminal Procedure 32(i)(4)(A) provides:
Before imposing sentence, the court must:
(i) provide the defendant’s attorney an opportunity to speak on the defendant’s behalf;
(ii) address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence; and
(iii) provide an attorney for the government an opportunity to speak equivalent to that of the defendant's attorney.

. In his concurring opinion, Judge Coogler cites United States v. Gilbert, 244 F.3d 888 (11th Cir.2001), for the proposition that we have "implicitly not found appellate jurisdiction lacking where the district court failed to include another type of required sentencing element-specifically forfeiture — -in the sentencing judgment.” Concurring op. at 1257. Gilbert does not stand for such a proposition.
In Gilbert, the defendant was convicted of violating RICO, and as such, the District Court was required to include forfeiture as part of the defendant's sentence. Id. at 924. The district court entered what purported to be a forfeiture order, but it did so in the absence of the defendant. Id. When the district court entered a final judgment four months after the purported forfeiture order, the judgment did not contain a forfeiture order. Id. at 924 n. 80. We concluded that the forfeiture was not part of the defendant’s sentence because the defendant was not afforded his right of allocution. Id. at 924-25. However, we suggested that because the district court imposed a final sentence in violation of law, the Government had a right to appeal, pursuant to 18 U.S.C. § 3742(b)(1). Id. at 924 n. 81. The Gilbert panel had no occasion to grapple with the jurisdictional question presented by the present case. However, not allowing Muzio’s appeal to proceed is consistent with Gilbert because, unlike the present case, the district court in Gilbert thought it had completed the sentencing process. Therefore, we had a "final sentence” that was "imposed in violation of law”; hence, the jurisdictional requirements of 18 U.S.C. § 3742(b) were satisfied.
In the present case, the District Court was aware that it had not completed sentencing the defendant. Had the court said nothing about restitution and issued what it considered to be a final judgment without imposing restitution, then Gilbert’s footnote would be on-point. However, as I have repeated elsewhere, the District Court’s July Judgment expressly stated that an amended final judgment would be forthcoming with restitution included. It never came. Thus, we do not have a *1272 final judgment, and we lack jurisdiction — under 18 U.S.C. § 3742(a) or 28 U.S.C. § 1291 — to hear this appeal.

. Indeed, Rosenbaum's objections to the Magistrate Judge’s Report and Recommendation demonstrated that had a Jones colloquy occurred, Rosenbaum would have placed his objections on the record. And in the "Objection of Restitution Hearing” Muzio filed on November 22, 2010, Muzio requested a hearing to "present evidence to refute Government testimony” on the restitution issue.

. I assume that the U.S. Attorney was aware that the Constitution and Federal Rules of Criminal Procedure 32 and 43 required Muz-io's presence, with counsel, when the court announced its restitution decision. Yet, in his brief on appeal and notwithstanding the failure of the District Court to afford Muzio his right to be present with counsel, he asks this court to affirm Muzio’s sentences, including the restitution assessed in the District Court's November 3, 2010, order.

. The majority suggests that requiring a defendant to wait until the court has completed its sentencing task before seeking an appeal "might raise constitutional problems of significant proportions.” Majority op. at 1255 (quoting Corey v. United States, 375 U.S. 169, 173, 84 S.Ct. 298, 302, 11 L.Ed.2d 229 (1963)). However, the majority does not identify the provisions of the Constitution that might be implicated. There are none.
”[I]t is well settled that there is no constitutional right to an appeal.” Abney v. United States, 431 U.S. 651, 656, 97 S.Ct. 2034, 2038, 52 L.Ed.2d 651 (1977) (citing McKane v. Durston, 153 U.S. 684, 14 S.Ct. 913, 38 L.Ed. 867 (1894)). Nor did such a right exist at common law. Martinez v. Court of Appeal, 528 U.S. 152, 159, 120 S.Ct. 684, 690, 145 L.Ed.2d 597 (2000). A right to appeal is not an essential requirement of due process. Reetz v. Michigan, 188 U.S. 505, 508, 23 S.Ct. 390, 392, 47 L.Ed. 563 (1903). The Sixth Amendment does not guarantee one. Martinez, 528 U.S. at 160, 120 S.Ct. at 690.
What, then, are the "constitutional problems” that might arise by dismissing this appeal for want of jurisdiction? The majority relies on stray dicta from Corey, wherein the *1273 Supreme Court suggested that requiring a defendant to delay an appeal under the since-repealed 18 U.S.C. § 4208(b) "might raise constitutional problems of significant proportions.” Corey, 375 U.S. at 173, 84 S.Ct. at 302. But this statement — undeveloped and unsubstantiated as it is and referring to a sentencing scheme materially at odds with one established by the Sentencing Reform Act of 1984 — cannot withstand the definitive and consistent statements of the Supreme Court that there is simply no constitutional right to an appeal. See, e.g., Martinez, 528 U.S. at 160, 120 S.Ct. at 690; Abney, 431 U.S. at 656, 97 S.Ct. at 2038; Reetz, 188 U.S. at 508, 23 S.Ct. at 392; McKane, 153 U.S. at 687-88, 14 S.Ct. at 915.
“The right of appeal, as we presently know it in criminal cases, is purely a creature of statute.” Abney, 431 U.S. at 656, 97 S.Ct. at 2038. For the first century of this Nation’s existence, criminal defendants had no right to appeal at all. Id. In 1889, Congress provided that in all cases in which a defendant is sentenced to death, the Supreme Court "shall, upon the application of the respondent, be reexamined, reversed, or affirmed by the Supreme Court of the United States upon a writ of error.” Act of Feb. 6, 1889, § 6, 25 Stat. 655, 656. Then, in 1911, Congress granted the courts of appeals the authority to review criminal cases. See Act of Mar. 3 1911, § 128, 36 Stat. 1087, 1133-34. Today, the right to appeal a conviction is enshrined in 28 U.S.C. § 1291; and the right to appeal a sentence is provided by 18 U.S.C. § 3742. Both sections require that an appeal will not lie until the district court has entered a final decision. Neither mandates that we review a provisional decision.
The majority's concern about the time Muz-io has spent in custody pending appeal is policy-driven, nothing more. No constitutional provision guarantees a right to an appeal, let alone a speedy right to appeal. Congress has not, in limiting our jurisdiction to final decisions, created an exception for appellants who happen to be in federal custody.

. On the effective date of the Parole Commission and Reorganization Act of 1976, May 14, 1976, the U.S. Board of Parole became the U.S. Parole Commission. Under the Comprehensive Crime Control Act of 1984, the Parole Commission retained jurisdiction over defendants who committed their offenses prior to November 1, 1987. At the same time, the Act provided for the abolition of the Parole Commission on November 1, 1992 (five years after the Sentencing Guidelines took effect). The Judicial Improvements Act of 1990 extended the life of the Parole Commission until November 1, 1997.

. The law in effect at the time did not give a defendant the right to appeal his sentence. It was not until the enactment of the Sentencing Reform Act of 1984 that Congress gave the defendant such right. See 18 U.S.C. § 3742(a); see also Koon v. United States, 518 U.S. 81, 96, 116 S.Ct. 2035, 2045, 135 L.Ed.2d 392 (1996) (“Before the Guidelines system, a federal criminal sentence within statutory limits was, for all practical purposes, not reviewable on appeal.”).

. My objection to the majority’s reliance on Cobbledick is not based on the factual distinctions between that case and this one. I object because Cobbledick is legally inapposite. The majority states that Cobbledick explains that "even though delays in piecemeal litigation may result, an interlocutory appeal in a criminal case is permissible when the alternative is to force the party to 'abandon [his] claim or languish in jail.’ ” Majority op. at 1249 (quoting Cobbledick, 309 U.S. at 328, 60 S.Ct. at 542). This is a patent misreading of Cobbled-ick. Cobbledick says that there will not be an interlocutory appeal from a court's denial of a motion to quash subpoenas. And the situations in which the Supreme Court has allowed interlocutory review are extremely limited. See infra part V.
The majority states that "when the rule that judgments are not appealable until final cannot be observed without undermining a defendant’s right to appeal — by, for example, indefinitely delaying that right — the former rule gives way to the latter right.” Majority op. at 1250 n. 8. The example provided, however, has been woven out of whole cloth. The majority’s reliance on Cobbledick is misplaced, for that case simply does not support any of the arguments put forth in support of entertaining Muzio’s appeal.

. The court holds that serving a term of imprisonment is sufficient, though perhaps not necessary, to render a judgment final. The majority explains that the court can leave for another day what the minimum threshold might be, and in doing so sets the stage for further litigation and, until the threshold is determined, considerable uncertainty regarding precisely when an appealable final judgment has been entered in those cases in which the district court retains jurisdiction for the purpose of entering an order on restitution (and if granted entering a final judgment).

. Under 18 U.S.C. § 3143(a)(1), the court "shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence ... be detained.” If, however, "the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released,” then that officer may *1277 release the defendant on his own recognizance or on bail. See 18 U.S.C. § 3143(a)(1).

. Until the District Court enters a final judgment incorporating a restitution order, it has jurisdiction over Muzio’s case and his prison sentences are provisional. Thus, when the court remanded him to the custody of the U.S. Marshals at the conclusion of the June 30, 2010, hearing, it did so pursuant to its authority to detain him pending the completion of the sentencing proceeding. This period of detention coupled with the time Muzio spent in pretrial detention will be credited toward Muzio's term of imprisonment once the execution of his sentences begins. See 18 U.S.C. § 3585.

. In his brief on appeal, Muzio challenged the sentenced imposed on June 30, 2010, on these grounds:
Whether the trial court erred when it imposed an unreasonable sentence as outlined in 18 U.S.C. § 3553(a).
Whether the trial court erred in calculating the defendant’s advisory sentencing guidelines in assessing a two level increase pursuant to § 2B1.1 for sophisticated means. Whether the trial court erred in calculating the defendant’s advisory sentencing guidelines in assessing a four level role increase pursuant to § 3B1.1 as an organizer or leader.
Whether the trial court erred in calculating the defendant’s advisory sentencing guidelines in assessing a two level role increase pursuant to § 3B1.1.3 for abuse of a position of trust.

. The majority gives the game away in footnote 9 of its opinion by giving legal effect to the notice of appeal Muzio filed on July 15, 2010, and requiring him to file a second notice of appeal from the District Court's amended final judgment containing a restitution order, if he wants to challenge that order.

. The United States and the defendant both have the right to appeal “an otherwise final sentence” on the ground, among others, that the sentence "was imposed in violation of law.” 18 U.S.C. §§ 3742(a)(1), (b)(1). Subsections 3742(a) and (b) imply that a non-final sentence is not reviewable. In affirming Muzio's prison sentences “without commenting on the aspects of his sentenced] related to restitution,” Majority op. at 1256, however, the court appears to be reviewing a non-final sentence contrary to this implication.

. To be sure, 18 U.S.C. § 3664(o) provides that "[a] sentence that imposes an order of restitution is a final judgment notwithstanding the fact that ... such a sentence can subsequently be ... amended under subsection (d)(5).” However, when § 3664(d)(5) speaks of amendment, it does so in a limited context. Specifically, that subsection states, If the victim subsequently discovers further losses, the victim shall have 60 days after discovery of those losses in which to petition the court for an amended restitution order. Such order may be granted only upon a showing of good cause for the failure to include such losses in the initial claim for restitutionary relief. *1279 18 U.S.C. § 3664(d)(5). Reading these two provisions together, a sentence that imposes restitution is final despite the fact that victims may subsequently discover new losses that will be added to the initial order. This amendment is different in-kind from the initial determination of the proper restitution amount. That is, § 3664(o) cannot be plausibly read to mean that the initial determination — going from zero dollars to potentially millions of dollars — is an "amendment.”
The other modifications listed in § 3664(o) are similarly circumscribed. It is not the case, as the majority seems to suggest, that once it determines the amount of restitution to be paid the district court retains a freewheeling ability to alter that amount. The same goes for corrections modifications to terms of imprisonment under 18 U.S.C. § 3582(b).
Nor can the subsequent determination of the restitution amount be deemed a "clerical error.” "Rule 36 [of the Federal Rules of Criminal Procedure] can be used to correct 'clerical' errors; it cannot be used, as it was here, to make a substantive alteration to a criminal sentence.” United States v. Pease, 331 F.3d 809, 816 (11th Cir.2003).

. Another example, although not implicated in this case, would involve the provisional imposition of a fine and a later determination that restitution is due. To illustrate, suppose a case in which the court imposes a fine as part of the provisional sentence but leaves the amount of restitution to be determined later. The court, after determining that restitution must be paid, should reevaluate the amount of the fine imposed to ensure that after paying the fine, the defendant will be able to make restitution in full. See 18 U.S.C. § 3572(b) (“If, as a result of a conviction, the defendant has the obligation to make restitution to a victim of the offense, other than the United States, the court shall impose a fine or other monetary penalty only to the extent that such *1280 fine or penalty will not impair the ability of the defendant to make restitution.”).
A similar case can be made for forfeiture. See Pease, 331 F.3d at 816 n. 18 ("In sum, forfeiture is part of the defendant’s sentencing package for an obvious reason. The magnitude of the forfeiture may influence how the court treats the other parts of the package. For example, if forfeiture is sizeable, the court may impose a fine at the bottom of the Sentencing Guidelines range or, if the forfeiture would render the defendant impecunious, perhaps no fine at all.”).

. The court's decision to leave the review of the restitution issues for another day implies that the District Court, after receiving our mandate, will have jurisdiction to order restitution. If our decision were treated as the disposition of an interlocutory appeal, the District Court's jurisdiction would be the jurisdiction it retained after issuing the provisional sentences on June 30, 2010. If today's decision were treated as final, query the source of the District Court’s jurisdiction to address the restitution issues following receipt of our mandate.

. I recognize that the Supreme Court, in dicta, has suggested that "strong arguments favor the appealability of the initial judgment irrespective of the delay in determining the restitution amount.” Dolan, 560 U.S. at 617, 130 S.Ct. at 2542. But the Court has said nothing' — in Dolan or any other decision — that would indicate how the law of the case problem should be handled.

. See generally Fed. R.App. P. 4(b)(1)(A). Experience teaches that in practically every case, defense counsel files a notice of appeal once the final judgment is entered. In this case, Muzio’s attorney, Caridad, moved the District Court for leave to withdraw and while the motion was pending filed a notice of appeal. This overly cautious approach in no way affects this court’s exercise of jurisdiction because the July Judgment was not an appeal-able judgment.

. The majority notes that defendants "will often choose to wait until all issues have been resolved so that the sentence can be appealed as a whole.” Majority op. at 1252. But if that is the case, why unnecessarily complicate matters by allowing two appeals? The fact that defendants will often choose not to seek interlocutory review is all the more reason not to allow it at all.

. I assume from the position the United States took in its brief that the Government would contend the defendant’s presence is not required at the second hearing. See supra note 36.